## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE J. HALL, REINA HERNANDEZ, and FLORIDALMA PORTILLO, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-00893-LDH-CLP |
| Plaintiffs, | **Served October 3, 2019** |
| v. | **Oral Argument Requested** |
| NASSAU COUNTY, DEPARTMENT OF ASSESSMENT OF NASSAU COUNTY, ASSESSMENT REVIEW COMMISSION OF NASSAU COUNTY, and DOES 1-25, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

*Counsel to Defendants Nassau County, Department of Assessment of Nassau County, and Assessment Review Commission of Nassau County*

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ......................................................................................................................... 11

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION PURSUANT
TO THE TAX INJUNCTION ACT .................................................................................. 11

   A.  The Tax Injunction Act Divests this Court of Subject Matter Jurisdiction ..................... 11

   B.  The Complaint's Attempts to Avoid the Application of the TIA Fail............................. 16

      1.  New York State Courts Provide Adequate Remedies for Plaintiffs ......................... 16

      2.  The TIA Bars Plaintiffs' Claim for Injunctive Relief............................................. 19

      3.  The TIA Bars Plaintiffs' Claims for Damages ......................................................... 20

      4.  Plaintiffs Challenge Enforcement of a Tax............................................................... 21

   C.  Principles of Comity Preclude the Exercise of Federal Court Jurisdiction
over Plaintiffs' Claims for Damages............................................................................... 23

II.  PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.................................... 25

   A.  Plaintiffs Lack Standing to Bring this Action Under Article III..................................... 26

   B.  Plaintiffs Lack Standing to Bring Claims Under the Fair Housing Act .......................... 28

   C.  Plaintiffs Lack Standing to Bring Claims for Violations of the Equal Protection
and Due Process Clauses of the Fourteenth Amendment ............................................... 29

III. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM........ 32

   A.  Standard of Review......................................................................................................... 32

   B.  Plaintiffs Fail to State a Claim under the Fair Housing Act ........................................... 33

   C.  Plaintiffs Fail to State a Claim for Violation of their Equal Protection Rights ............... 34

   D.  Plaintiffs Fail to State a Claim for Violation of Due Process......................................... 36

      1.  Plaintiffs' Procedural Due Process Claims Should be Dismissed ............................. 36

      2.  Plaintiffs' Substantive Due Process Claims Should be Dismissed............................ 37

   E.  Plaintiffs' Remaining Claims Fail ................................................................................. 38

CONCLUSION...................................................................................................................... 40

## **TABLE OF AUTHORITIES**

**CASES**                                                                                      **Page(s)**

*22 Park Place Cooperative v. Board of Assessors*,
  102 A.D.2d 893 (2d Dep't 1984)..........................................................................17

*Abele v. Dimitriadis*,
  53 A.D.3d 969 (3d Dep't 2008)..........................................................................36

*Acevedo v. Fischer*,
  No. 12-cv-6866,
  2014 U.S. Dist. LEXIS 139057 (S.D.N.Y. Sept. 29, 2014)...................................37

*ACLU of Ill. v. White*,
  692 F. Supp. 2d 986 (N.D. Ill. 2010) ..............................................................22-23

*Adams v. Schoenstadt*,
  57 A.D.3d 1073 (3d Dep't 2008)........................................................................36

*Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, W. Va.*,
  488 U.S. 336 (1988)............................................................................................35

*Anderson Grp., LLC v. City of Saratoga Springs*,
  805 F.3d 34 (2d Cir. 2015).................................................................................34

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................32-33

*Bernard v. Village of Spring Valley*,
  30 F.3d 294 (2d Cir. 1994)......................................................................12, 24, 25

*Board of Managers of Acorn Ponds v. Board of Assessors*,
  197 A.D.2d 620, 621 (2d Dep't 1993),
  *lv. denied*, 83 N.Y.2d 759 (1994).................................................................5, 35

*Chasalow v. Board of Assessors*,
  202 A.D.2d 499, 501 (2d Dep't 1994),
  *lv. denied*, 83 N.Y.2d 759 (1994).......................................................5, 34, 35, 40

*Coleman v. Seldin*,
  181 Misc. 2d 219 (Sup. Ct., Nassau Co. 1999).....................................................19

*Community Dev., Inc. v. Sarpy Cnty. Neb.*,
  No. 8:16CV135,
  2016 U.S. Dist. LEXIS 89369 (D. Neb. May 26, 2016).....................................14-15

*Community Hous. Mgmt. Corp. v. City of New Rochelle*,
  381 F. Supp. 2d 313 (S.D.N.Y. 2005)......................................................................14

*Coon v. Town of Whitecreek*,
  No. 16-CV-318,
  2016 U.S. Dist. LEXIS 138928 (N.D.N.Y. Oct. 6, 2016) ......................................15

*Corvetti v. Town of Lake Pleasant*,
  227 A.D.2d 821 (3d Dep't 1996) ............................................................................35

*Davidson v. Flynn*,
  32 F.3d 27 (2d Cir. 1994)...................................................................................37, 38

*Derrick v. Nationstar Mortg., LLC*,
  No. 16-CV-261,
  2017 U.S. Dist. LEXIS 122100 (E.D.N.Y. Aug. 2, 2017)........................................8

*Dillon v. Mississippi*,
  376 F. App'x 421 (5th Cir. 2010) .............................................................13, 14, 20

*Doe v. Cuomo*,
  755 F.3d 105 (2d Cir. 2014)....................................................................................31

*Empire v. Governor of N.Y.*,
  No. 11-CV-1509,
  2012 U.S. Dist. LEXIS 96023 (N.D.N.Y. July 11, 2012)........................................20

*Epstein v. JPMorgan Chase & Co.*,
  No. 13-cv-4744,
  2014 U.S. Dist. LEXIS 38628 (S.D.N.Y. Mar. 21, 2014) ......................................33

*Evans v. Port Auth. of N.Y. & N.J.*,
  No. 15-CV-3942 (MKB),
  2017 U.S. Dist. LEXIS 125386 (E.D.N.Y. Aug. 8, 2017)........................................28

*Fair Assessment in Real Estate Association v. McNary*,
  454 U.S. 100 (1981)...........................................................................................23, 24

*Fitzgerald v. Thompson*,
  No. 07 CV 6851 (BSJ),
  2009 U.S. Dist. LEXIS 132903 (S.D.N.Y. Jan. 5, 2009) ......................................30

*Four K. Grp., Inc. v. NYCTL 2008-A Trust*,
  No. 12-cv-2315,
  2013 U.S. Dist. LEXIS 53591 (E.D.N.Y. Apr. 15, 2013) ...........................15, 18, 23

*Frazier v. Rominger*,
   27 F.3d 828 (2d Cir. 1994)............................................................................34

*Gass v. County of Allegheny*,
   371 F.3d 134 (3d Cir. 2004).........................................................................14

*Georgetown Prop. Owners Ass'n v. Georgetown*,
   No. 01-881-SLR,
   2002 U.S. Dist. LEXIS 19723 (D. Del. Sept. 27, 2002)..........................18

*Grace v. Hynes*,
   No. 95 C 4640,
   1996 U.S. Dist. LEXIS 12533 (N.D. Ill. Aug. 23, 1996)........................14

*Green v. Konover Residential Corp.*,
   No. 3:95-cv-1984,
   1997 U.S. Dist. LEXIS 18893 (D. Conn. Nov. 24, 1997) ......................34

*Greenberg v. Town of Scarsdale*,
   477 F. App'x 849 (2d Cir. 2012) ...........................................................13, 24

*Harrah Indep. Sch. Dist. v. Martin*,
   440 U.S. 194 (1979)....................................................................................37

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
   101 F.3d 877 (2d Cir. 1996).......................................................................36

*Hibbs v. Winn*,
   542 U.S. 88 (2004).............................................................................. *passim*

*Hickmann v. Wujick*,
   488 F.2d 875 (2d Cir. 1973)..................................................................14, 17

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015).................................................. 27-28

*Hoffer v. Ancel*,
   32 F. App'x 593 (2d Cir. 2002) ...........................................................13, 25

*Jaimes v. Toledo Metro. Hous. Auth.*,
   758 F.2d 1086 (6th Cir. 1985) ...................................................................29

*Jones v. W. Suffolk Boces*,
   No. CV-03-3252,
   2008 U.S. Dist. LEXIS 13077 (E.D.N.Y. Feb. 20, 2008)................... 38-39

*Kraebel v. New York City Dep't of Housing Preservation & Dev.*,
959 F.2d 395 (2d Cir. 1992),
*cert. denied*, 506 U.S. 917 (1992) ..........................................................................18

*Laflamme v. New Horizons, Inc.*,
605 F. Supp. 2d 378 (D. Conn. 2009) ......................................................................34

*Laquer v. Priceline Group*,
722 F. App'x 22 (2d Cir. 2018) ...............................................................................27

*Levin v. Commerce Energy, Inc.*,
560 U.S. 413 (2010) ....................................................................................23, 24, 25

*Long Island Lighting Co. v. Town of Brookhaven*,
889 F.2d 428 (2d Cir. 1989) ...........................................................12, 18, 21, 25

*Luessenhop v. Clinton County*,
466 F.3d 259 (2d Cir. 2006) ....................................................................................16

*Macagna v. Town of E. Hampton*,
No. 09-CV-3064,
2010 U.S. Dist. LEXIS 83428 (E.D.N.Y. Aug. 16, 2010) ......................................15

*McKinney v. New Haven Police Dep't*,
No. 3:17-cv-1663 (JCH),
2017 U.S. Dist. LEXIS 183307 (D. Conn. Nov. 6, 2017) .......................................28

*Miller v. N.Y. Div. of Tax Appeals*,
480 F. Supp. 2d 574 (E.D.N.Y. 2007) ...............................................................11, 18

*Miller v. Silbermann*,
951 F. Supp. 485 (S.D.N.Y. 1997) ..........................................................................28

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
701 F. Supp. 2d 568 (S.D.N.Y. 2010) .....................................................................30

*Natale v. Town of Ridgefield*,
170 F.3d 258 (2d Cir. 1999) ....................................................................................37

*Nat'l Private Truck Council v. Okla. Tax Comm'n*,
515 U.S. 582 (1995) .................................................................................................25

*Owens v. Nationwide Mut. Ins. Co.*,
No. 3:03-CV-1184-H,
2003 U.S. Dist. LEXIS 17461 (N.D. Tex. Oct. 1, 2003) ........................................29

*Palmieri v. Town of Babylon*,
  No. 01-1399,
  2006 U.S. Dist. LEXIS 27694 (E.D.N.Y. Jan. 6, 2006) ....................................28, 29

*Pflaum v. Town of Stuyvesant*,
  937 F. Supp. 2d 289 (N.D.N.Y. 2013) ...................................................................31

*Puglisi v. Underhill Park Taxpayer Ass'n*,
  947 F. Supp. 673 (S.D.N.Y. 1996)...................................................................27, 29

*Ragin v. Harry Macklowe Real Estate Co.*,
  6 F.3d 898 (2d Cir. 1993)........................................................................................34

*Rodriguez v. Bear Stearns Cos.*,
  No. 07-cv-1816,
  2009 U.S. Dist. LEXIS 31525 (D. Conn. Apr. 14, 2009) .......................................39

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981)..........................................................................................16, 17

*Smith v. New York State Dep't of Taxation and Finance*,
  No. 01-CV-1776,
  2002 U.S. Dist. LEXIS 10375 (E.D.N.Y. May 17, 2002) .......................................21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)............................................................................................26

*Stern v. City of N.Y.*,
  No. 17-CV-4973,
  2019 U.S. Dist. LEXIS 50518 (E.D.N.Y. Mar. 25, 2019) .......................................31

*Trezza v. The Hartford, Inc.*,
  No. 98-CV-2205,
  1998 U.S. Dist. LEXIS 20206 (S.D.N.Y. Dec. 28, 1998) .......................................39

*Trump v. Chu*,
  65 N.Y.2d 20 (1985),
  *appeal dismissed*, 474 U.S. 915 (1985) ................................................................35

*T.S. Haulers, Inc. v. Town of Riverhead*,
  190 F. Supp. 2d 455 (E.D.N.Y. 2002) ....................................................................37

*Tully v. Griffin*,
  429 U.S. 68 (1976)..................................................................................................18

*United Food & Commer. Workers Unions v. DeBuono*,
   101 F. Supp. 2d 74 (N.D.N.Y. 2000) .................................................................20

*United States v. County of Nassau*,
   79 F. Supp. 2d 190 (E.D.N.Y. 2000) ........................................................ *passim*

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).................................................................................37

*Wetzel v. Town of Orangetown*,
   308 F. App'x 474 (2d Cir. 2009) ...............................................................28

*Youth Alive v. Hauppauge Sch. Dist.*,
   No. 08-CV-1068,
   2012 U.S. Dist. LEXIS 148086 (E.D.N.Y. Oct. 12, 2012).............................29, 30

## STATUTES AND RULES

Fair Housing Act, 42 U.S.C. § 3601 ............................................................ *passim*

Fair Housing Amendments Act of 1988, P.L. 100-430, 102 Stat. 1633 (1988) ...........................15

Fed. R. Civ. P.,
   12(b)(1) ........................................................................................... *passim*
   12(b)(6) ...........................................................................................1, 32, 33

House Report No. 100-711, reprinted in 1998 U.S.C.C.A.N. (102 Stat.) 2173-2174 ..................15

Nassau County Charter,
   § 601.................................................................................................28
   § 603.........................................................................................4, 39, 40

NCAC § 5-10.1 ...........................................................................................4

NCAC § 6-26.0(b)(3)(c) ............................................................................3, 4

RPTL § 305(2) ...........................................................................................4
RPTL Article 5.........................................................................................5, 17
RPTL Article 7.....................................................................................17, 36, 37

Tax Injunction Act of 1937, 28 U.S.C § 1341 ................................................ *passim*

United States Constitution, Article III .............................................24, 26, 28, 33

Defendants Nassau County (the "**County**"), Department of Assessment of Nassau County ("**DOA**"), and Assessment Review Commission of Nassau County ("**ARC**") move to dismiss the Class Action Complaint (ECF 1, "**Complaint**")[1] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The Court lacks subject matter jurisdiction over this dispute under the Tax Injunction Act of 1937, 28 U.S.C § 1341, and Plaintiffs lack standing to bring their claims because they have not suffered any injury in fact. This case must therefore be dismissed pursuant to Rule 12(b)(1). Further, if the Court were to have jurisdiction and Plaintiffs were to have standing, the case should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state any claim upon which relief can be granted.

## BACKGROUND

Plaintiffs allege that they are part of a class of minority census tract property owners who have been discriminated against in their Nassau County tax assessments. ¶ 197. Plaintiffs are property owners[2] in the Village of Hempstead ("**Hempstead Village**" or "**VOH**"), a minority census tract in the County, where Plaintiff Wayne J. Hall happened to serve as the elected Mayor

---

[1] The "¶" symbol refers to paragraphs in the Complaint unless noted.

[2] The U.S. Census Bureau defines "minority" as "people who are races other than White … or are Hispanic." *See* "Glossary," United States Census Bureau, available at https://www.census.gov/population/www/cen2000/censusatlas/pdf/16_Backmatter-Glossary.pdf (last accessed Sept. 25, 2019) ("**U.S. Census Bureau Glossary**"). A "[c]ensus tract" is defined as "[a ]small, relatively permanent statistical subdivision of a county delineated by a local committee of census data users for the purpose of presenting data." *Id.* The Complaint refers to minority census tracts as non-white; however, for the purposes of consistency with the U.S. Census terms, the census tracts in this motion will be referred to as minority or white in line with the U.S. Census Bureau's glossary.

Nassau County's Office of Housing and Community Development defines "minority census tracts" as census tracts where "[r]esidents of minority background comprise 51 percent or more of a census tract's population." *See* "Glossary," Nassau County, available at https://www.nassaucountyny.gov/DocumentCenter/View/16868/Appendix-C-Glossary?bidId= (last accessed Sept. 25, 2019) ("**Nassau Housing Glossary**").

between 2005- 2017.[3] Plaintiffs allege that the County's method of assessing the value of real property for taxation purposes discriminates against residential property owners in minority census tracts because (1) minority census tract property owners are less likely to be aware of, and therefore use, grievance procedures to challenge their tax assessments, and thus (2) minority census tract property owners have the tax burden "shifted" to them. ¶¶ 67-96, 109-170.

Nassau County has over 1.37 million residents, over 7,000 employees and an annual budget of approximately $3 billion of which around 26.5 percent is raised through the real property tax.[4]  Nassau County's assessment process is governed by a myriad of authorities including the New York State Real Property Tax Law ("**RPTL**"), the Nassau County Administrative Code ("**NCAC**") and the Nassau County Charter ("**Charter**") which determine how the County assesses all four classes of property within its borders, including that of Plaintiffs and the putative class. The four classes of property defined in Article 18 of the RPTL are as follows. Class I: one-, two- and three-family houses and residential condominiums of three stories or less and most residential vacant land ("**Property Owners**"); Class II: apartment buildings, residential cooperatives and residential condominiums of four stories or more; Class III: all public utility equipment defined as real property in state law; and Class IV: all properties not defined in the first three classes and containing primarily commercial and business properties and vacant land that is not zoned residential.[5]  Plaintiffs are disputing Class I residential assessments.

---

[3] *See* Stefanie Dazio & John Asbury, "Hempstead Village gets new mayor as Don Ryan defeats Wayne Hall," Newsday (Mar. 22, 2017) available at https://www.newsday.com/long-island/politics/hempstead-village-gets-new-mayor-as-don-ryan-defeats-wayne-hall-1.13300256. (last accessed September 25,2019).

[4] *See* "County of Nassau, New York General Obligations," Nassau County, available at https://www.nassaucountyny.gov/DocumentCenter/View/ 25640/2019A-BANS-OS-DATED-6-20-19?bidId= (last accessed Oct. 1, 2019).

[5] *See* "Glossary of Assessment Terms," Nassau County, available at https://www.nassaucountyny.gov/1505/ Glossary-of-Assessment-Terms (last accessed Sept. 25, 2019) ("**Nassau County Glossary of Assessment Terms**").

The County assesses all real property in its borders and levies taxes for itself and on behalf of the County's three towns, the Town of Oyster Bay, the Town of North Hempstead, and the Town of Hempstead, approximately 200 special districts and all but one of the 56 school districts within the County.[6] Nassau County is only one of two county assessing units in New York State.[7] By contrast, Westchester County is typical of the other counties in New York State in that it has no role in property assessment, which is administered by the respective towns and cities in that county.[8] Further, Nassau County's tax burden is distinguished from every other county in New York State because of a unique, onerous local mandate called the "County Guaranty" that only applies to the County. *See* NCAC § 6-26.0(b)(3)(c).[9]

Assessments determine how the "tax levy," or the amount of money that school districts, special districts and municipalities require to be collected to fund their operating budgets, will be apportioned among all of the taxable Property Owners in a taxing jurisdiction.[10] The DOA multiplies a property's assessed value by the school and general municipal "tax rates"[11] in order to calculate the dollar amount to be paid in taxes by the Property Owner.[12] Thereafter, the County issues tax warrants, while the city and town receivers collect the taxes and distribute the

---

[6] *See* "Comprehensive Annual Financial Report (CAFR) for the Fiscal Year Ended December 31, 2018," Nassau County, available at https://www.nassaucountyny.gov/DocumentCenter/View/25778/Nassau-County-CAFR---Secured-20182019 (last accessed Oct. 1, 2019).

[7] *See* "Volume 8 – Opinions of Counsel SBEA No. 10," New York State Department of Taxation and Finance, available at https://www.tax.ny.gov/pubs_and_bulls/orpts/legal_opinions/v8/10.htm (last accessed Oct. 1, 2019).

[8] *See* "Taxes and Liens," Westchester County Government, available at http://finance.westchestergov.com/taxes-and-liens/ (last accessed Sept. 25, 2019).

[9] The relevant provisions of the NCAC are attached to the accompanying Declaration of Regina M. Calcaterra in Support of Motion to Dismiss ("**Calcaterra Decl.**") as Exhibit RC-2.

[10] *See* Nassau County Glossary of Assessment Terms (n.5, *supra*).

[11] A "tax rate" is a "rate per one hundred dollars of assessed value expressed in dollars and cents. Each local governing body - county, town, school and special district - determines its own budget. The amount to be raised by taxes, divided by the assessed value from the jurisdiction would equal the tax rate per $100 of assessed valuation." *See id.*

[12] *See* "Assessment Frequently Asked Questions," Nassau County, available at https://www.nassaucountyny.gov/FAQ.aspx?TID=32 (last accessed Oct. 1, 2019).

3

"tax levy" to the taxing authorities. NCAC § 5-10.1.  The County retains only a part of the levies that it collects for its own revenue purposes, with the large majority distributed to other taxing authorities.

If Class I Property Owners appeal and receive a refund, the County Guaranty requires the County to pay for the entire refund to the Property Owner and prohibits the County from seeking reimbursement from the hundreds of taxing authorities that received tax revenue for their pro rata share of the refund. In other words, the County is responsible for paying 100% of the refund even though it retained only a small fraction of the taxes that it levied, and even though a large part of the levies were distributed to and received by the other taxing agencies within its jurisdiction. *See* NCAC § 6-26.0(b)(3)(c). The unique County Guaranty almost put Nassau County into bankruptcy in 2000, resulting in the appointment of the Nassau County Interim Finance Authority, a municipal oversight board that was mandated by the State of New York to manage the County's fiscal crisis.[13] In addition to the RPTL and the NCAC, the County's assessment process is further codified in the Charter,[14] which, among other things, charges the DOA to "establish an equitable and scientific system of assessing property for taxation." Charter § 603. From 1938 to 2002, the DOA used a cost-based methodology for Class I property. Since then, it has assessed based on market value.

Real property may be assessed at a percentage of full value, referred to as fractional assessment. RPTL § 305(2). An "assessed value" is a "figure in dollars determined by an

---

[13] *See* "Nassau County 2007 Financial Condition Report," Nassau County, available at
https://www.nassaucountyny.gov/DocumentCenter/View/3291/NassauCounty2007FinancialConditionReport?bidId
(last accessed Oct. 2, 2019).

[14] The relevant provisions of the Charter are attached to the Calcaterra Decl. as Exhibit RC-3.

assessor that reflects a property's worth in relation to other properties on an assessment roll and that, unless exempt, is used to compute a tax dollar obligation by multiplying it by a tax rate."[15]

In *Chasalow v. Board of Assessors*, 202 A.D.2d 499, 501 (2d Dep't 1994), *lv. denied*, 83 N.Y.2d 759 (1994), the court held that any disparities resulting from the County's assessment methodology do not render the methodology illegal, and that "rough equality, not complete uniformity, is all that is required" to satisfy the constitutional right to equal protection. *See also Board of Managers of Acorn Ponds v. Board of Assessors*, 197 A.D.2d 620, 621 (2d Dep't 1993), *lv. denied*, 83 N.Y.2d 759 (1994) (the "method of assessment was applied in a consistent manner with respect to all Class I [*i.e.,* residential] property in Nassau County. Accordingly, it must be concluded that 'similarly situated [taxpayers were] treated uniformly.' (internal citations omitted)).

### The Procedures for Challenging Tax Assessments

If a Property Owner is dissatisfied with their assessment, there is a statutory judicial procedure available for the Property Owner to seek judicial review. RPTL Art. 5, Title 1-a. Any Property Owner may follow the procedures outlined in RPTL Article 5 to protest the assessment assigned to a particular property.[16]

Property Owners must, however, first exhaust their administrative remedies by seeking review of their assessment before ARC, an independent agency, separate from the DOA, which is responsible for annually reviewing all assessment grievances filed in Nassau County.[17] Property Owners are informed of ARC appeal procedures in numerous ways, including via the

---

[15] *See* Nassau County Glossary of Assessment Terms (n.5, *supra*).

[16] Although a Property Owner may disagree with the DOA's appraised fair market value, appeals affect only the assessment. *See* n.22, *infra*.

[17] *See* "Assessment Review Commission," Nassau County, available at https://www.nassaucountyny.gov/arc (last accessed Oct. 1, 2019).

Internet, telephone, the County's website, mail, newsletters, local and regional newspapers, advertising at Nassau County Long Island Railroad stations, and postings at local public libraries.[18] The County's website also has answers to frequently asked questions to help Property Owners decide whether to appeal a property assessment, as well as a guide explaining how to appeal.[19] Dozens of community forums are held each year describing the appeals process available to all Property Owners.[20] Nassau County does not charge any fee for filing an appeal with ARC.[21] An appeal can be filed online or via a paper application and requires only basic information from Property Owners about their property.[22] Property Owners can provide examples of nearby comparable home sales and list the market value at which they believe their home should be assessed.[23] Property Owners are not required to use an attorney or representative.[24] If a Property Owner hires an attorney or representative to challenge an assessment, they may change attorneys or representatives or file for themselves for review at any

---

[18] *See, e.g., id.*; *see also* n.20, *infra*; "Ask the County Assessor," Nassau County, available at https://www.nassaucountyny.gov/4624/Ask-The-County-Assessor?fbclid=IwAR1GR8FWi-v2usnbM1IRFSQOKxqIr0jXEEwMb-x_fRCp7wkxxcLlYhWtg3qQ (last accessed Oct. 2, 2019); "Nassau County Assessment Review Commission," Facebook, available at https://www.facebook.com/NassauARC/ (last accessed Oct. 2, 2019).

[19] *See* "Frequently Asked Questions," Nassau County, available at https://www.nassaucountyny.gov/4703/Frequently-Asked-Questions (last accessed Oct. 1, 2019); *see also* "ARC BROCHURE 2019 - HOW TO APPEAL YOUR ASSESSMENT," Nassau County, available at https://www.nassaucountyny.gov/DocumentCenter/View/13230/ARC-Tri-2020-2021-11-x-8-5?bidId= (last accessed Oct. 1, 2019).

[20] *See* "Information for Property Owners," Nassau County, available at https://www.nassaucountyny.gov/1517/Information-for-Property-Owners (last accessed Oct. 1, 2019).

[21] *See id.*

[22] *See id.*

[23] *See* "How it works: Nassau County's assessment grievance system," Newsday (Jan. 2, 2019) available at https://www.newsday.com/long-island/politics/how-to-nassau-assessment-challenge-tax-grievance-1.25385396.

[24] A Property Owner may, of course, file with the use of a lawyer or representative from a tax consultancy group. In Nassau County, three prominent tax consultancy groups are Maidenbaum Property Tax Reduction Group, LLC, Fred Perry Property Tax Reduction, and Property Tax Reduction Consultants, Inc. *See, e.g.,* "Maidenbaum, The Leader in Property Tax Reduction," Maidenbaum, available at https://www.maidenbaumtax.com (last accessed Oct. 1, 2019); *see also* "Perry Property Tax Reduction," Fred Perry Tax, available at https://fredperrytax.com (last accessed Oct. 1, 2019); "P.T.R.C. Specializing In Reducing Long Island Property Taxes Since 1990", PTRC, available at https://www.ptrc.com (last accessed Oct. 1, 2019).

time.[25] ARC cannot increase the assessed value of a property as a result of a grievance filing; it may either reduce the assessment following an appeal or leave it unchanged.[26]

If Property Owners are dissatisfied with ARC's determination, the New York State Real Property Tax Law provides two ways to appeal the outcome. First, a Property Owner may commence a special proceeding in New York State Supreme Court to challenge an assessment. RPTL §§ 700 *et seq*. Second, there is a small claims assessment review ("**SCAR**") procedure designed to facilitate the speedy and efficient review of residential assessments. RPTL § 730. The SCAR procedure allows the residential Property Owner to rely upon a "residential assessment ratio" calculated by New York State for a special assessing unit for purposes of small claims hearings. RPTL §§ 732, 738. Hearing officers are appointed by the chief administrator of the courts so that SCAR proceedings may be heard promptly. RPTL § 731.

Thus, despite Plaintiffs' allegation that minority communities are assessed at higher rates than white communities, New York State law provides for a full and complete review procedure for each and every instance in which a Property Owner believes that their property is burdened by an excessive or unequal assessment. Statistics and analysis of "average" assessments are irrelevant when state law provides a remedy for every taxpayer seeking to review an individual assessment.[27]

Moreover, Plaintiffs themselves concede that "[t]he County does not lose revenue by reducing an assessment because the amount of the reduction is shifted onto *all* other properties."

---

[25] *See* n.20, *supra*.

[26] *See id.*

[27] Plaintiffs also allege that Nassau County has a "**Settlement Policy**" by which it "reduced assessments based merely on whether the Property Owner filed a challenge." ¶ 87. Not only is there nothing discriminatory about reassessing the property only of those who challenge their assessments, reducing assessments is exactly what the appeals process is for. The Settlement Policy applies equally regardless of the Property Owner's race or the location of their property.

¶ 72 (emphasis added). Although Plaintiffs allege that an assessment freeze (the "**Freeze**") causes the tax burden to "shift" to minority Property Owners, any "shift" in the tax burden caused by a reduction of assessment on a property is to *every* other Property Owner to some degree – whether white or minority, and whether or not they challenged their assessment – to offset Nassau County's responsibility for raising the full tax levy. This means that the burden for making up reduced assessments shifted mostly to the vast majority of Nassau County Property Owners who did not appeal their tax assessments and not just to Property Owners in minority census tracts. This fact alone defeats the premise of the Complaint.

**Plaintiffs Were Aware of and Used the Grievance Procedures**

Hempstead Village, where all three Plaintiffs live, and where Plaintiff Hall served as the elected Mayor from 2005-2017, is a minority census tract within Nassau County.[28] In Hempstead Village, an average of 25% of the residential Property Owners filed appeals year after year from 2010-2017, the period that Plaintiffs allege the County's actions stymied those residing in minority census tracts from grieving their assessments. ARC Decl. ¶ 2.[29] This is the same percentage of Hempstead Village residential Property Owners that filed tax appeals year after year from 2006 to 2010, before the alleged chilling effect of the Freeze and Settlement Policy. *Id.*

---

[28] Because more than 51% of the population of Hempstead Village identified as a "minority" in the most recent (2010) U.S. Census, it is a minority census tract. *See* "QuickFacts on Hempstead Village," United States Census Bureau, available at https://www.census.gov/quickfacts/hempsteadvillagenewyork (last accessed Sept. 25, 2019); *see also* Nassau Housing Glossary (n.2, *supra*).

[29] "**ARC Decl.**" refers to the Declaration of Robin S. Laveman, dated October 3, 2019. On a motion to dismiss for lack of standing, the movant may submit, and the Court may consider, documents and other evidence outside the Complaint relevant to the determination of adequate standing. *See Derrick v. Nationstar Mortg., LLC*, No. 16-CV-261, 2017 U.S. Dist. LEXIS 122100, at *2 n.1 (E.D.N.Y. Aug. 2, 2017) ("Because the Court is assessing whether it has subject matter jurisdiction, it may rely on documents outside the [c]omplaint.").

Plaintiff Reina Hernandez ("**Hernandez**"), together with non-party Oscar Torres, owns a property in Hempstead Village, which was purchased for $300,000 on October 3, 2007.[30] Hernandez submitted grievances to ARC to challenge her assessment three times – for the 2007-2008, 2014-2015, and 2019-2020 assessment rolls. ARC Decl. ¶ 5. In 2006, Hernandez submitted an appeal to ARC challenging her assessment for the 2007-2008 assessment roll, but ARC determined that no reduction was warranted. *Id*. ¶ 6. On February 18, 2013, Hernandez again submitted a grievance to ARC challenging her assessment for the 2014-15 assessment roll. *Id*. ¶ 7. This grievance succeeded and resulted in Hernandez receiving a reduction to her assessment of approximately 22.7%. *Id*. On April 2, 2018, Hernandez again grieved her assessment, this time for the 2019-2020 assessment roll. *Id*. ¶ 8. This grievance resulted in her obtaining a further reduction of approximately 4.2%. *Id*.

Plaintiff Floridalma Portillo ("**Portillo**") also obtained a reduction in the assessment of her property after submitting grievances through ARC. She owns a property in Hempstead Village, which she purchased for $237,000 on April 24, 2003.[31] Portillo submitted grievances to ARC to challenge her assessment three times – for the 2016-2017, 2019-2020, and 2020-2021 assessment rolls, and for each grievance, she was represented by the Maidenbaum Property Tax Reduction Group, LLC, an assessment grievance firm in Nassau County. ARC Decl. ¶ 10.[32] On February 23, 2015, Portillo submitted an appeal to ARC challenging her assessment for the 2016-17 assessment roll. *Id.* ¶ 11. This grievance was successful and resulted in Portillo receiving a reduction to her assessment of approximately 25%. *Id*. Portillo also submitted an

---

[30] *See* "Nassau County Land Records," Nassau County, available at https://i2f.uslandrecords.com/NY/Nassau/D/Default.aspx?AspxAutoDetectCookieSupport=1 (last accessed Oct. 1, 2019).

[31] *See* "Nassau County Land Records," Nassau County, available at https://i2f.uslandrecords.com/NY/Nassau/D/Default.aspx?AspxAutoDetectCookieSupport=1 (last accessed Oct. 1, 2019).

[32] *See also* n.24, *supra*.

appeal to ARC challenging her assessment for the 2019-2020 assessment roll, but ARC determined that no reduction was warranted. *Id*. ¶ 12. Portillo filed a third grievance with ARC, challenging her property's 2020-2021 tentative assessed value, which is still pending. *Id*. ¶ 13.

Finally, Plaintiff Wayne J. Hall ("**Hall**") has sought multiple reductions in assessment utilizing the SCAR process. He owns a property in Hempstead Village, which he purchased for $127,000 on May 5, 1988.[33] He used the SCAR process to challenge his assessment three times – for the 1994-1995, 2000-2001, and 2001-2002 assessment rolls. DOA Decl. ¶ 3.[34] Hall successfully obtained a reduction to his assessment of approximately 16.7% after challenging his assessment for the 1994-1995 assessment roll. *Id*. ¶ 4. Hall again challenged his assessment for the 2000-2001 assessment roll, but it was determined no reduction was warranted. *Id*. ¶ 5. When Hall challenged his assessment for the 2001-2002 assessment roll, he successfully obtained a reduced assessment of approximately 4.4%. *Id.* ¶ 6. Hall served as Mayor of Hempstead Village for twelve years, from 2005 to 2017.[35] While in office, Hall did not appeal his assessment; however, during the 2006-2017 tax years, (approximately the same time period Hall was in office), there were 21,897 assessment appeals filed by Class I residential home owners residing within Hempstead Village. ARC Decl. ¶ 3.

---

[33] *See* "Nassau County Land Records," Nassau County, available at  https://i2f.uslandrecords.com/NY/Nassau/D/Default.aspx?AspxAutoDetectCookieSupport=1 (last accessed Oct. 1, 2019).

[34] **DOA Decl.**" refers to the Declaration of David F. Moog, dated October 3, 2019.

[35] *See* n.3, *supra*.

<u>ARGUMENT</u>

I. **THE COURT LACKS SUBJECT MATTER**
   **JURISDICTION PURSUANT TO THE TAX INJUNCTION ACT**

    A.     <u>The Tax Injunction Act Divests this Court of Subject Matter Jurisdiction</u>

The Tax Injunction Act of 1937, 28 U.S.C § 1341 ("**TIA**"), explicitly requires any action challenging the "assessment, levy, or collection" of any tax authorized under state law – as this action unquestionably does – to be brought in state, not federal, court. This Court therefore lacks subject matter jurisdiction over this action, and should dismiss this case under Rule 12(b)(1).

The TIA states, in its entirety, that United States District Courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Supreme Court has held repeatedly that the primary objective of the TIA is to "stop taxpayers… from withholding large sums, thereby disrupting state government finances." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004); *see also United States v. County of Nassau*, 79 F. Supp. 2d 190, 195 (E.D.N.Y. 2000) (TIA "is premised upon the imperative need of a state to administer its own fiscal operations, free from interference by the federal courts." (internal citation omitted)). The TIA bars cases, such as this, where "state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Hibbs*, 542 U.S. at 107. Indeed, "[a]s long as the state provides sufficient remedies, the taxpayer is prohibited from filing suit in federal court." *Miller v. N.Y. Div. of Tax Appeals*, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007). As set forth in Section I(B)(1), *infra*, New York State courts provide a more-than-sufficient forum to litigate these claims.

This District has considered claims very similar to those brought by Plaintiffs here, and dismissed them for lack of subject matter jurisdiction pursuant to the TIA and Rule 12(b)(1). In *U.S. v. Nassau*, the federal government brought claims against the County of Nassau, the Nassau

County Board of Assessors, and its chairman under the Fair Housing Act, 42 U.S.C. § 3601 ("**FHA**"), alleging that the manner in which the County assessed real property was racially discriminatory. The federal government alleged that the County determined real property values for assessment purposes based on historical data instead of current market valuations, resulting in racial discrimination against minority Property Owners insofar as property values in white areas allegedly rise faster than those in minority areas. 79 F. Supp. 2d at 191. The court dismissed the action for lack of subject matter jurisdiction, finding that the TIA barred the federal government's FHA claims from federal court. *Id.* at 197.[36]

Likewise, the Second Circuit has repeatedly and consistently applied the TIA and principles of comity to hold that actions challenging the constitutionality, legality or propriety of an assessment or tax collection belong exclusively in state court. In *Bernard v. Village of Spring Valley*, 30 F.3d 294 (2d Cir. 1994), the plaintiff claimed that the Village's refusal to assess his lot as a separate property for tax purposes constituted an unconstitutional taking, and sought compensatory and punitive damages under Section 1983. The Second Circuit held that the action was barred from federal court by the TIA and comity even though the plaintiff had already obtained a determination from a state court that the Village's actions were improper, because

> although the illegality of the village's actions under state law has already been determined, the constitutionality of those actions is still in question. By asking the district court to decide this question…Bernard is in effect seeking a federal-court ruling on a local tax matter, precisely the type of suit the Tax Injunction Act was designed to limit as to both declaratory and injunctive relief.

---

[36] The TIA has two exceptions that apply *only* if an action is brought by the federal government, as was the case in *U.S. v. Nassau*: (1) where the United States sues to protect itself or its instrumentalities from state taxation; and (2) if the federal government sues to vindicate its interest in the protection and enforcement of its policies and programs. *See* 79 F. Supp. 2d at 192, 193. The Court found neither exception to be applicable. *Id.* at 196. Of course, as this action is brought by private individuals, not the federal government, neither exception applies here.

*Id.* at 297. The Court also held that comity barred plaintiff Bernard's claims for damages. *Id.* The Second Circuit reached this same conclusion in many other actions challenging assessments for taxation purposes. *See, e.g.*, *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989) ("*LILCO*") (suit brought by the Long Island Lighting Company, the owner of Shoreham Nuclear Power Plant, challenging Brookhaven town assessments was barred from federal court by TIA and comity); *Greenberg v. Town of Scarsdale*, 477 F. App'x 849, 850 (2d Cir. 2012) (federal courts lack jurisdiction over Section 1983 action challenging assessment of property for tax collection purposes); *Hoffer v. Ancel*, 32 F. App'x 593, 597 (2d Cir. 2002) (affirming dismissal of action challenging assessment pursuant to TIA and comity).

Federal appellate courts throughout the United States have reached the same conclusion as the Second Circuit and dismissed actions challenging state assessment and tax collection because the TIA explicitly provides that such cases belong exclusively in state court. In *Dillon v. Mississippi*, 376 F. App'x 421 (5th Cir. 2010), the plaintiffs alleged – much as Plaintiffs do here – that state assessors were over-valuing African-American farmers' properties and under-valuing white farmers' properties. The Fifth Circuit distinguished the plaintiffs in *Dillon*, who sought relief from state tax laws as applied to them, from the plaintiffs in *Hibbs*, who did "not contest their own tax liability [nor] seek to impede [the state's] receipt of tax revenues." *Id.* at 423. The court interpreted *Hibbs* "to allow challenges to state tax laws in federal court only where (1) a third party (not the taxpayer) files suit, and (2) the suit's success will enrich, not deplete, the government entity's coffers." *Dillon*, 376 F. App'x at 424 (internal citations and quotations omitted). The court in *Dillon* also noted that "any consequent relief…would involve the disruption of state tax administration…specifically in relation to the collection of revenue," and held that the claims at issue "are precisely the type of claims foreclosed by the [TIA]" and that

"both longstanding judicial policy and congressional restriction of federal jurisdiction in cases involving state tax administration make it the duty of federal courts to withhold relief when a state legislature has provided an adequate scheme whereby a taxpayer may maintain a suit to challenge a state tax." *Id.* at 422-23 (internal citations and quotations omitted). The Fifth Circuit also held that:

> [T]he language of the Tax Injunction Act makes clear [that] the bar to federal jurisdiction does not depend on the federal statute or constitutional provision that the tax law allegedly violates; rather, jurisdiction depends on whether the relief sought requires the federal court to enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law.

*Id.* at 424 (internal citations and quotations omitted). *See also Gass v. County of Allegheny*, 371 F.3d 134, 136-37 (3d Cir. 2004) (action challenging the appeals process by which Property Owners could contest an assessment was barred from federal court by the TIA and comity because "[t]he appeal process is directed to the [defendant's] ultimate goal and responsibility of determining the proper amount of tax to assess – a power of 'assessment' that explicitly falls within the ambit of the Tax Injunction Act").

Courts throughout the United States have held that actions challenging a tax scheme as violating the FHA – as Plaintiffs attempt here – are barred by the TIA. *See, e.g.*, *Hickmann v. Wujick*, 488 F.2d 875, 879 (2d Cir. 1973) ("Basing a complaint upon alleged violation of civil rights…or of the Federal Constitution will not avoid the prohibition contained in [the TIA]."); *Grace v. Hynes*, No. 95 C 4640, 1996 U.S. Dist. LEXIS 12533, at *3 (N.D. Ill. Aug. 23, 1996) (dismissing taxpayers' FHA case for lack of subject matter jurisdiction under the TIA); *Cmty. Hous. Mgmt. Corp. v. City of New Rochelle*, 381 F. Supp. 2d 313, 323 (S.D.N.Y. 2005) (dismissing complaint alleging violations of FHA and constitutional challenges for lack of subject matter jurisdiction under TIA); *Cmty. Dev., Inc. v. Sarpy Cnty. Neb.*, No. 8:16CV135,

14

2016 U.S. Dist. LEXIS 89369, at *8 (D. Neb. May 26, 2016) (holding court lacked jurisdiction over taxpayers' complaint implicating both the FHA and the flow of tax revenues). In *U.S. v. Nassau*, the court noted that the 1988 amendments to the FHA, which were enacted to "remov[e] barriers to the use of court enforcement by private litigants and the Department of Justice," did not amend the jurisdictional limitations of the TIA. 79 F. Supp. 2d at 196 (internal citation and quotation omitted). The court held that "[i]n light of the comprehensive and constructive revision of the enforcement provisions of the [FHA] in 1988, the Court is reluctant to believe that Congress also intended to restrict the application of the [TIA], but neglected explicitly to do so." *Id.*[37] ("Nothing in the language or legislative history of [the FHA statute] would warrant permitting [a plaintiff] to bring [a FHA] case in federal court in the face of the [TIA].").

Federal courts also routinely apply the TIA to dismiss Section 1983 actions challenging a state tax. For example, in *Coon v. Town of Whitecreek*, No. 16-CV-318, 2016 U.S. Dist. LEXIS 138928, at *5 (N.D.N.Y. Oct. 6, 2016), the court dismissed for lack of subject matter jurisdiction a Property Owner's § 1983 action against the Town, noting that "[t]he Second Circuit and district courts within this circuit have repeatedly held that federal jurisdiction is barred by the TIA when there is a claim involving state and local tax matters, even in the presence of alleged constitutional violations." *See also Four K. Grp., Inc. v. NYCTL 2008-A Trust*, No. 12-cv-2315, 2013 U.S. Dist. LEXIS 53591, at *21 (E.D.N.Y. Apr. 15, 2013) (a "claim[] which challenges the amount of taxes imposed on [a property] falls squarely within the ambit of the TIA"); *Macagna v. Town of E. Hampton*, No. 09-CV-3064, 2010 U.S. Dist. LEXIS 83428, at *20 (E.D.N.Y. Aug. 16, 2010) (the TIA precludes "using federal courts as a vehicle to bring suits challenging *the validity or amount of a particular tax* assessed against an individual or entity" (emphasis in

---

[37] For the 1988 amendments to the FHA, *see* Fair Housing Amendments Act of 1988, P.L. 100-430, 102 Stat. 1633 (1988). *See also* House Report No. 100-711, reprinted in 1998 U.S.C.C.A.N. (102 Stat.) 2173-2174.

original)); *Luessenhop v. Clinton County*, 466 F.3d 259, 265-68 (2d Cir. 2006) (noting that the TIA would apply where taxpayers object to the method used by the local governments to collect taxes).

Accordingly, Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction because they are barred from federal court under the TIA.

**B.      The Complaint's Attempts to Avoid the Application of the TIA Fail**

Plaintiffs implicitly acknowledge this Court's lack of subject matter jurisdiction in their Complaint, devoting several paragraphs to explaining why they believe the TIA does not apply to this action. All of these attempts to avoid the clear and unambiguous provisions of the TIA fail. The crux of the Complaint is the allegation that Nassau County's assessment and levying of real property taxes is inherently discriminatory and must be changed (*see* ¶¶ 1, 57-108) and that Plaintiffs should be awarded damages for the allegedly excessive taxes they paid (*i.e.*, a refund). Complaint, Prayer for Relief, ¶ d. As the Supreme Court held in *Hibbs*, cases involving "plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes)" fall within the "undisputed compass" of the TIA. 542 U.S. at 106. If this Court were to grant Plaintiffs the relief they seek, the Court would be forced to issue an injunction constraining the "assessment, levy or collection" of a state-authorized local tax, and to award Plaintiffs a large refund of tax monies. This is precisely the situation the TIA was designed to prevent.

**1.      New York State Courts Provide Adequate Remedies for Plaintiffs**

Plaintiffs contend that the New York State court system is incapable of adequately adjudicating this action, and that this action is properly before this Court despite the clear directive of the TIA. ¶¶ 190, 192. Extensive authority belies this argument. In determining what constitutes a "plain, speedy and efficient remedy" under the TIA, the Supreme Court noted in *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981), that the TIA requires only that a "state

16

court remedy…meet[] certain minimal *procedural* criteria." *Id.* at 512 (emphasis in original). The Court went on to state that all that is required to meet such criteria is a showing that the state court offers "a 'full hearing and judicial determination' at which [the claimant] may raise any and all constitutional objections to the tax." *Id.* at 514 (citation omitted).

The procedures set forth under RPTL and New York Civil Practice Law and Rules ("**CPLR**") demonstrate that New York State courts more than satisfy the "minimal procedural criteria" required by the Supreme Court in *Rosewell*. A Property Owner in New York may protest, or "grieve," the assessment assigned to a particular property and may obtain administrative and judicial review thereof. *See* RPTL Article 5, Title 1-A and Article 7. Under RPTL § 730, residential Property Owners may also challenge their assessments through small claims assessment review procedures, which are specifically designed to facilitate the speedy review of residential assessments such as those challenged in this action. Finally, a Property Owner may also challenge assessments in certain rare and specific circumstances in a declaratory judgment action or a CPLR Article 78 proceeding. *See, e.g.*, *22 Park Place Cooperative v. Board of Assessors*, 102 A.D.2d 893 (2d Dep't 1984) (listing examples). Indeed, the Second Circuit has held that:

> The remedies afforded for review of real property assessments are adequate. Plaintiffs may seek judicial review of their assessment under Section 700 of the Real Property Tax Law, and adverse determinations may be appealed, § 724. That the remedy is expeditious is shown by Section 700(3) which grants to such proceedings and appeals a preference over all other civil actions and proceedings in all courts.

*Hickmann,* 488 F.2d at 876. Similarly, this District has explicitly held that New York State courts provide a multitude of sufficient remedies for a taxpayer to challenge a New York State tax:

> The specific remedies available to [] plaintiff[s] are plain, speedy and
> efficient and thus procedurally adequate under § 1341 and principles of
> comity. New York tax law permits a taxpayer to contest a tax assessment
> by making a claim subject to administrative and judicial review. It allows
> a taxpayer to petition to the Tax Commission and grants the taxpayer an
> opportunity for a hearing on reasonable prior notice . . . He may also
> petition for redetermination of a deficiency pursuant to N.Y. Tax Law §
> 689(b). New York Tax Law § 2016 and Article 78 provide for judicial
> review of a decision of the Tax Appeals Tribunal before the Appellate
> Division, Third Department . . . A petitioner could also seek leave to
> appeal to the New York Court of Appeals.

*Miller*, 480 F. Supp. 2d at 579, citing *Xuong Trieu v. Urbach*, No. 98-CV-8278, 1999 U.S. Dist.

LEXIS 10172, at *12 (S.D.N.Y. July 6, 1999); *see also Tully v. Griffin, Inc.*, 429 U.S. 68 (1976)

(finding that New York State courts provide a "plain, speedy and efficient remedy" to taxpayers

and applying TIA to divest federal court of jurisdiction over claims challenging collection of

state taxes); *LILCO*, 889 F.2d at 431 (New York State court remedies are sufficient for purposes

of TIA); *Kraebel v. New York City Dep't of Housing Preservation & Dev.*, 959 F.2d 395, 400 (2d

Cir. 1992), *cert. denied*, 506 U.S. 917 (1992) (rejecting plaintiff's argument that New York State

court remedies are inadequate); *Four K. Grp.*, 2013 U.S. Dist. LEXIS 53591, at *21 (federal

court lacks subject matter jurisdiction over plaintiff's challenge to the city's assessment of

property taxes).

Plaintiffs contend that "class-wide relief to the Class in state court is uncertain due to

legal precedent that prohibits class certification when plaintiffs sue the state or local government

for conduct that applies to the entire class." ¶ 192. However, as the court noted in *Georgetown*

*Prop. Owners Ass'n v. Georgetown*, No. 01-881-SLR, 2002 U.S. Dist. LEXIS 19723 (D. Del.

Sept. 27, 2002), sufficient state law remedies need not "provide the full panoply of rights and

remedies afforded under the Fair Housing Act," but rather merely "provide[] the taxpayer with a

full hearing and judicial determination at which the taxpayer may raise any and all constitutional

objections to the tax." *Id.* at *4 n.1, quoting *Lawyer v. Hilton Head Public Service District No. 1,* 220 F.3d 298, 301-02 (4th Cir. 2000). As shown above, New York State courts plainly allow the Plaintiffs an adequate forum to raise any and all of their objections.

Finally, Plaintiffs reference *Coleman v. Seldin,* 181 Misc. 2d 219 (Sup. Ct., Nassau Co. 1999) or the *Coleman* "consent order" nearly 80 times in the Complaint. They repeatedly request this Court to order Nassau County to comply with the *Coleman* consent order entered by a New York State court (and which has since expired by its terms). *See, e.g.,* ¶¶ 37-46, Prayer for Relief, ¶ b. If a New York State court were inclined to issue a new order similar to the one in *Coleman* that Plaintiffs concede addressed their alleged injuries, there is no doubt that a New York State court would do so again if appropriate.[38]

## 2. The TIA Bars Plaintiffs' Claim for Injunctive Relief

Plaintiffs claim that the TIA does not apply because they do not seek an "immediate injunction to protect them from paying property taxes," (¶ 180) but rather seek "damages and/or changes to the current property tax system that would redistribute the tax burden" (¶ 182). Yet Plaintiffs do indeed seek a "permanent injunction that restrains Defendants…from unlawfully violating and interfering with Plaintiffs' and putative Class members' civil rights…and directing Defendants to take all affirmative steps necessary to remedy the effects of the…conduct described herein," as well as a "permanently effective, court-supervised order that requires Defendants to, in perpetuity, (i) conduct annual, scientific assessments of all residential property, (ii) resolve grievance proceedings based on scientific assessments, and (iii) comply with the

---

[38] Notably, the *Coleman* court held in the consent order that, after two and a half years of litigation, it "has made no finding that any of the defendants have engaged in race discrimination or that the assessment system is racially discriminatory or illegal." *Coleman* consent order at 3. The consent order was a negotiated agreement among the parties in *Coleman* that included the U.S. Department of Justice, the New York State Attorney General and the ACLU. Moreover, the *Coleman* consent order expired in 2006 by its terms. *Id.* at 8-9.

requirements of the *Coleman* Consent Order." Complaint, Prayer for Relief, ¶¶ b, c. Plaintiffs'
attempt to distinguish their request for a permanent injunction from a request for "immediate
relief" is moot because, under the TIA, ***any*** request for injunctive relief that would impact a
state's ability to assess or collect a tax is barred from federal court. *See, e.g., United Food &
Commer. Workers Unions v. DeBuono*, 101 F. Supp. 2d 74, 79 (N.D.N.Y. 2000) (pursuant to the
TIA, denying plaintiff's request for a permanent injunction that would affect the collection of a
state tax); *Empire v. Governor of N.Y.*, No. 11-CV-1509, 2012 U.S. Dist. LEXIS 96023, at *15
(N.D.N.Y. July 11, 2012) (dismissing complaint which sought permanent injunctive relief for
lack of subject matter jurisdiction pursuant to the TIA). *See also Dillon*, 376 F. App'x at 424
(TIA bars actions seeking "to enjoin, suspend or restrain the assessment, levy or collection of
any tax under State law." (citation omitted)).

### 3.    The TIA Bars Plaintiffs' Claims for Damages

Plaintiffs further attempt to avoid the jurisdictional bar of the TIA by claiming that they
do not seek to "restrain the assessment, levy, or collection of a real property tax," but rather
"seek damages and/or changes to the current property tax system that would redistribute the tax
burden…." ¶¶ 181-82. This is a distinction without difference under the TIA. First, as set forth in
Section I(B)(2), *supra*, Plaintiffs do indeed seek injunctive relief that would change the manner
in which Nassau County assesses property for taxation. *See* Complaint, Prayer for Relief, ¶¶ b, c.
Further, Plaintiffs seek "compensatory damages in an amount to be determined by the jury that
would fully compensate Plaintiffs and putative Class members for [their] losses…." Complaint,
Prayer for Relief, ¶ d. Such damages clearly constitute a "refund" of state-authorized local
property taxes paid by Plaintiffs and thus fall within the TIA. *Hibbs*, 542 U.S. at 106 (claims
seeking a refund of taxes fall within the "undisputed compass" of the TIA). Further, claims for
damages arising out of a challenge to a state or local tax are barred from federal court under

20

principles of comity, as discussed in Section I(C), *infra. See*, *e.g.*, *LILCO*, 889 F.2d at 431 (taxpayers claim for damages pursuant to Section 1983 barred from federal court by TIA and principles of comity); *Smith v. New York State Dep't of Taxation and Finance*, No. 01-CV-1776, 2002 U.S. Dist. LEXIS 10375, at *5 (E.D.N.Y. May 17, 2002) ("[A]lthough the TIA mentions only injunctions, its policy of comity bars…damages actions as well." (internal quotation and citation omitted)).

### 4.     Plaintiffs Challenge Enforcement of a Tax

Plaintiffs next claim that they do "not challenge the tax but rather, the credits and other reductions via grievance proceedings, assessment freezes, and other policies and practices that Defendants have implemented to the benefit of whites and owners [of] property in white communities." ¶ 189. This argument relies upon a misreading of *Hibbs*. In actuality, *Hibbs* makes clear that the TIA was designed to apply to cases such as this.

 In *Hibbs*, the U.S. Supreme Court held that the TIA did not bar a challenge to an Arizona law authorizing income-tax credits for payments to "school tuition organizations" ("STOs") that award scholarships to children attending private schools. 542 U.S. at 93. The purpose of these STOs is to permit Arizona taxpayers to obtain a tax credit in exchange for, essentially, donating funds to a private school, thereby – in theory – directing money that would otherwise be paid to the state in the form of taxes back to taxpayers, and, indirectly, the private schools. *See id.* The *Hibbs* plaintiffs were a group of Arizona taxpayers who alleged that this law violated the Establishment Clause of the U.S. Constitution insofar as it permitted the redirection of taxpayer funds to private schools that, at least in some cases, maintained religious affiliations. *Id.* at 95. In analyzing whether these tax credits constituted a "tax" for the purposes of the TIA, the Supreme Court looked to the legislative history and purpose of the TIA, noting that the statute was enacted to "'limit drastically' federal-court interference with 'the collection of state taxes'" so that state

budgets would not be paralyzed by taxpayers challenging their taxes in federal court. *Id.* at 105 (citation omitted). *Hibbs* merely upheld a decades-old principle – not challenged by Nassau County here – that the TIA does not apply to "third parties…pursuing constitutional challenges to ***tax benefits*** in a federal forum." *Id.* at 108 (emphasis added). Unlike Plaintiffs here, the *Hibbs* plaintiffs did not seek a refund of any monies paid to the state and did not seek a court order that would reduce state revenue. Indeed, *Hibbs* is expressly distinct from cases such as this one, where "plaintiffs who mounted federal litigation [sought] to avoid paying state taxes (or to gain a refund of such taxes)" because, in such instances, "[f]ederal-court relief, therefore, would have operated to *reduce* the flow of state tax revenue." *Id*. at 106 (emphasis added).

Thus, the crucial TIA analysis under *Hibbs* is whether the relief sought would *increase* or *decrease* the state's tax revenue. If the action seeks to *decrease* state revenue, the TIA applies; if the action seeks to *increase* revenue, the TIA may not apply. Despite Plaintiffs' attempt to frame the Complaint as a challenge to "credits and other reductions," Plaintiffs here – unlike the *Hibbs* plaintiffs – actually seek a refund of their property taxes. *See* Complaint, Prayer for Relief, ¶¶ d, e. Because of the County Guaranty, any refunds paid to Property Owners result in an effective net decrease to the County's revenue because the County will not be reimbursed by the other taxing authorities in its jurisdiction for their pro rata share of the refund.

Finally, Plaintiffs' argument that Nassau County's "property 'tax' is not a tax" because it allegedly "operates as a fee or penalty on those who are nonwhite, own a residence in a nonwhite community, are unable to afford a tax representative, or fail to file a grievance" strains credulity. ¶ 196. Despite Plaintiffs' tortured wordsmithing, real property taxes are, without exception, "taxes" for the purposes of the TIA. "Where a levy confers a general benefit to the public it is considered a tax; a fee, by contrast, provides more narrow benefits to regulated companies or

defrays an agency's cost of regulation." *ACLU of Ill. v. White*, 692 F. Supp. 2d 986, 989 (N.D. Ill. 2010) (quotation omitted). Property taxes in Nassau County are put to public use, and are not tied to any specific benefit.[39] Moreover, this District has unequivocally held that property taxes are a "tax," and thus claims challenging the assessment or collection of property taxes are subject to the jurisdictional limitations set forth in the TIA. *See U.S. v. Nassau*, 79 F. Supp. 2d at 191 (claims alleging discrimination in assessment of property taxes dismissed pursuant to TIA).

### C. Principles of Comity Preclude the Exercise of Federal Court Jurisdiction over Plaintiffs' Claims for Damages

This Court further lacks subject matter jurisdiction over this action pursuant to the principles of judicial comity, which "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction," reflecting

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010) (quotations omitted). "The principle of comity is more embracive than the TIA. Comity can preclude the exercise of lower federal court jurisdiction over tax matters that the TIA cannot reach." *Four K. Grp.,* 2013 U.S. Dist. LEXIS 53591, at *18 (internal citations and quotations omitted).[40]

The Supreme Court has applied the principle of comity to uphold the dismissal of actions seeking damages arising out of actions barred by the TIA, even when such actions seek damages

---

[39] *See* n.20, *supra.*

[40] The Supreme Court has yet to definitively determine whether the TIA, by itself, precludes a plaintiff from seeking damages arising out of an allegedly improper "assessment, levy or collection" of a state tax. In *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100 (1981), the Supreme Court did not reach the issue because it was rendered moot when the Court held that principles of comity divested the federal court of jurisdiction because damages actions "would be no less disruptive of [a state's] tax system than would the historic equitable efforts to enjoin the collection of taxes, efforts which were early held barred by considerations of comity." *Id.* at 113.

under Section 1983. In *McNary,* 454 U.S. at 117, the taxpayer plaintiffs brought Section 1983 claims against a county, alleging that the county deprived them of equal protection and due process of law by unequal taxation of real property. The Court held that "the principle of comity bars federal courts from granting damages relief in [state tax cases]." *Id.* at 107. In reaching this conclusion, the Court considered the doctrine, set forth in *Monroe v. Pape*, 365 U.S. 167 (1961), that principles of comity do not apply to Section 1983 claims, stating:

> [W]e have two divergent lines of authority respecting access to federal courts for adjudication of the constitutionality of state laws. Both cannot govern this case. On one hand, [the TIA]…bars at least federal injunctive challenges to state tax laws. . . .On the other hand is the doctrine originating in *Monroe v. Pape*, that comity does not apply where §1983 is involved, and that a litigant challenging the constitutionality of any state action may proceed directly to federal court. With this divergence of views in mind, we turn now to the facts of this case, a § 1983 challenge to the administration of state tax laws which implicates both lines of authority. **We hold that…as to such actions…the principle of comity controls**.

*McNary*, 454 U.S. at 105 (emphasis added). *See also Levin,* 560 U.S. at 424 ("our precedents affirm that the comity doctrine is more embracive than the TIA."). Therefore, based on the principle of comity, taxpayers "must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court." *McNary*, 454 U.S. at 116.

The Second Circuit consistently applies the doctrine of comity broadly to actions implicating the TIA, dismissing damages claims in actions "seeking a federal-court ruling on a local tax matter." *Greenberg*, 477 F. App'x at 850, quoting *Bernard*, 30 F.3d at 297. In *Bernard*, the Second Circuit affirmed the District Court's dismissal under the TIA for lack of subject matter jurisdiction in an action seeking "a federal-court ruling on the constitutionality of [the village's tax assessment] plus damages for the resulting harm. Such a determination would inject the district court into local tax-assessment matters, which is precisely what [*McNary*] and *LILCO*

held was excluded from federal jurisdiction." *Bernard*, 30 F.3d at 298. If these issues must be determined, it must be in state, not federal, court." *Id*; *see also Hoffer*, 32 F. App'x at 597 ("[T]his Court has held that, when the administration of a state tax scheme is involved, even actions by state tax officials that have been held in state court to contravene state laws are not cognizable in federal court."); *U.S. v. Nassau*, 79 F. Supp. 2d at 195 ("After balancing the principles of comity underlying the [TIA] as against the Section 1983 right of access to the federal courts to redress civil rights violations, the Supreme Court sided with comity.").

Likewise, Plaintiffs here will only recover damages if they prove that Nassau County's real property assessment and tax system violated their constitutional rights. Thus, the principle of comity applies to this action. *See Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 589 (1995) ("[Section] 1983 does not permit federal courts to award damages in state tax cases when state law provides an adequate remedy."); *Levin*, 560 U.S. at 415 (dismissing case under comity considerations because if a "[state's] scheme is unconstitutional, [that state's] courts are better positioned to determine …how to comply with the mandate of equal treatment").

Because all of Plaintiffs' claims challenge Nassau County's assessment of real property for state-authorized local taxes, all of their claims are barred from this Court pursuant to the TIA and principles of comity. This action should therefore be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS

This Court should also dismiss this action under Rule 12(b)(1) because none of the Plaintiffs have suffered a "concrete and particularized" injury necessary under Article III of the U.S. Constitution for standing to bring a claim. Plaintiffs cannot claim to be injured by the County's assessment and grievance process because each of them successfully used the very

process they claim is discriminatory to obtain reductions to their own property assessments. In fact, two of the three Plaintiffs grieved their assessments and received reductions and refunds during the years they allege the County discriminated against minority census tract Property Owners because of the Freeze and Settlement policies. ¶¶ 67-96. Plaintiffs cannot challenge an assessment system that did not allegedly or actually cause them any actual harm. Plaintiffs therefore lack standing to bring this action.

### A.  Plaintiffs Lack Standing to Bring this Action Under Article III

Plaintiffs lack standing under Article III of the U.S. Constitution, which requires a plaintiff to show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted). An injury must be particularized and "affect the plaintiff in a personal and individual way." *Id.* The injury must be "concrete" and "must actually exist." *Id.* An injury is not concrete simply because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

Plaintiffs allege that the County's property assessment and grievance process violates the FHA, as well as their constitutional rights to due process and equal protection, because it allegedly shifted a tax burden from Property Owners in white census tracts to Property Owners in minority census tracts. ¶¶ 1, 57-108. However, none of the Plaintiffs claim to have suffered any actual harm because of this. In fact, as set forth above, all of the Plaintiffs have filed multiple grievances of their property assessments and each of them has received reductions. *Supra*.

None of the Plaintiffs allege that they suffered any concrete or particularized injury. For example, they do not claim that they paid more in property taxes than other Nassau County Property Owners with similar properties. Nor do they claim that they were barred or otherwise

discouraged from utilizing the grievance process. They do not claim that they were unaware of the grievance process or the ends it could achieve. They do not claim that they face an imminent threat of being deprived of their ability to use the grievance process or obtain a reduction in their assessed property value in the future. Indeed, Plaintiffs could not possibly claim any actual injury in fact as each of the Plaintiffs has made multiple grievances of the assessment of their real property, and each Plaintiff has received reductions in such assessments as a result of filing such grievances. *See* Background, *supra*; ARC Decl. ¶¶ 4-13; DOA Decl. ¶¶ 2-6.

"Standing includes both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. The prudential standing rule… normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves. The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Laquer v. Priceline Group*, 722 F. App'x 22, 24 (2d Cir. 2018) (quotations and citations omitted).

Further, "prudential principles prohibit plaintiff from asserting generalized grievances or abstract questions of wide public significance and limit plaintiff to asserting only his own legal interests or rights." *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 682 (S.D.N.Y. 1996). Plaintiffs therefore lack prudential standing because they do not allege any actual injury to themselves, and refer only to the harm allegedly caused to the putative class. ¶¶ 219, 230, 241, 262, 281, 294, 301, 317, 329, 340, 349, 355.

It is well established that "[s]tanding cannot be acquired through the back door of a class action. Rather, the named class plaintiffs must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Hidalgo v. Johnson & Johnson Consumer*

*Cos.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (quotations omitted); *see also Miller v. Silbermann*, 951 F. Supp. 485, 491 (S.D.N.Y. 1997) ("[T]he fact that plaintiffs purport to represent a broader class adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured. . . ." (internal citations and quotations omitted)). Therefore, the allegation that Nassau County's actions may have harmed some other individuals who are members of the putative class does not confer standing on the Plaintiffs here.[41]

## B. Plaintiffs Lack Standing to Bring Claims Under the Fair Housing Act

To have standing to bring a claim under the FHA, "abstract injury is not enough,. . .the injury or threat of injury must be both real and immediate[,] not conjectural or hypothetical." *Wetzel v. Town of Orangetown*, 308 F. App'x 474, 476 (2d Cir. 2009) (quotations and citations omitted). Here, Plaintiffs do not claim to have been injured in any way by any act of Nassau County. Nor can they plausibly claim that they face a threat of injury, given that they have demonstrated their high level of familiarity with the assessment and grievance process by having sought, and obtained, reduced assessments of their respective properties.

This District has concluded that plaintiffs lack standing to pursue their claims when faced with similar FHA allegations. In *Palmieri v. Town of Babylon*, No. 01-1399, 2006 U.S. Dist. LEXIS 27694, at *41 (E.D.N.Y. Jan. 6, 2006), this District considered an FHA challenge to a town law which required Property Owners to obtain a rental permit for any non-owner occupied

---

[41] Plaintiffs' claims under 42 U.S.C. § 1981 and § 601 of the Nassau County Charter are also barred for Plaintiffs' lack of standing under Article III. *See Evans v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3942 (MKB), 2017 U.S. Dist. LEXIS 125386, at *17 n.8. (E.D.N.Y. Aug. 8, 2017) (dismissing § 1981 claim and noting that "violation of a statutory requirement does not confer Article III standing if there is no injury-in-fact" (citations and quotations omitted)); *McKinney v. New Haven Police Dep't*, No. 3:17-cv-1663 (JCH), 2017 U.S. Dist. LEXIS 183307, at *13 (D. Conn. Nov. 6, 2017) (noting that in order to have standing to bring state law claims, a plaintiff must still meet the Article III injury in fact requirement).

rental unit. Like Plaintiffs here, the *Palmieri* plaintiff asserted

> in general fashion that the Town's housing discrimination caused him and others to suffer economically. However, Plaintiff's Complaint and supporting documentation fail to specify how the Rental Permit Law specifically caused Plaintiff … any injury, economic or otherwise.

*Id.* at *40. This District held that "Plaintiff's reliance solely on the supposed discrimination against minorities in the Town is insufficient to confer standing. Plaintiff 'must rely on his own injury and not that of [others]." *Id.*, quoting *Puglisi*, 947 F. Supp. at 694. Likewise, Plaintiffs here base their FHA claims on the premise that the Freeze and grievance process is discriminatory against minority census tract Property Owners as a class. As minority census tract Property Owners, Plaintiffs contend that they are therefore entitled to relief under the FHA. ¶¶ 214-17, 224-27, 236-39. However, mere membership in a minority group that allegedly suffered harm is insufficient to confer standing for an FHA claim. *See Owens v. Nationwide Mut. Ins. Co.*, No. 3:03-CV-1184-H, 2003 U.S. Dist. LEXIS 17461, at *6 (N.D. Tex. Oct. 1, 2003) ("[A minority plaintiff,] by bringing a class action, cannot create standing to assert claims for an injury that she did not suffer."); *see also Jaimes v. Toledo Metro. Hous. Auth.*, 758 F.2d 1086, 1093 (6th Cir. 1985) (dismissing FHA claims because "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" (citation and quotation omitted)).

### C.    Plaintiffs Lack Standing to Bring Claims for Violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment

This District has held that when state action "leaves [a plaintiff] no worse off," a plaintiff does not have standing to pursue an Equal Protection claim because "[s]uch a result would eliminate the injury-in-fact requirement for standing in equal protection cases entirely." *Youth Alive v. Hauppauge Sch. Dist.*, No. 08-CV-1068, 2012 U.S. Dist. LEXIS 148086, at *15

(E.D.N.Y. Oct. 12, 2012) (dismissing plaintiffs' equal protection claims seeking monetary, injunctive, and declaratory relief).

In *Youth Alive*, the plaintiffs alleged a school did not afford a religious group the same privileges as non-religious groups because the school did not pay supervisors to monitor the religious group's meetings, though the school either provided an unpaid supervisor or had the principal attend in lieu of a supervisor so that meetings were never cancelled. The Court held this had "no discernable effect on [p]laintiffs' ability to exercise their [constitutional] rights," and that "if [p]laintiffs were correct that they could establish standing based merely on differential treatment, a party that *benefited* from a classification would, in theory, be able to challenge its validity. Such a result would fundamentally contradict the principle of standing." *Id.* at *89, *11 (emphasis in original). *See also Fitzgerald v. Thompson*, No. 07 CV 6851 (BSJ), 2009 U.S. Dist. LEXIS 132903, at *18-19 (S.D.N.Y. Jan. 5, 2009) (a group of veterans challenging a state decision to renovate an armory lacked standing to bring equal protection claim as they failed to allege that they were "able and ready to apply" for the contract to renovate the armory).

In *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 574-77 (S.D.N.Y. 2010), religious leaders brought equal protection claims against numerous towns because of zoning regulations that allegedly delayed the development of a religious center. The court dismissed certain plaintiffs' claims for lack of standing because they "failed to allege that they ha[d] personally suffered any injury from the delay," insofar as such plaintiffs did not allege that they themselves intended to "work, teach, or study" at the religious center. *Id*. at 583.

Like the *Youth Alive* and *Mosdos Chofetz Chaim* plaintiffs, Plaintiffs here are "no worse off" as a result of the challenged state action. In fact, like the *Youth Alive* plaintiffs, Plaintiffs actually *benefitted* from the challenged action, insofar as their grievances resulted in reductions

in their assessments. *See* Background, *supra*. Thus, Plaintiffs' claims for violations of the Equal Protection Clause must be dismissed because they have suffered no ascertainable injury.

Plaintiffs' claims for violations of the Due Process Clause fare no better. In order to have standing to bring a procedural due process claim, a plaintiff must have had "actual or threatened injury as a result of the allegedly inadequate process." *Stern v. City of N.Y.*, No. 17-CV-4973, 2019 U.S. Dist. LEXIS 50518, at *9 (E.D.N.Y. Mar. 25, 2019); *see also Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 295, 304 (N.D.N.Y. 2013) (dismissing procedural due process claim alleging that plaintiff's town "manipulate[ed] real estate assessments to result in artificially lower taxes for favored residents and artificially higher taxes on less favored residents" where plaintiff failed to "allege that he was denied the procedures available to grieve his tax assessment"). Likewise, where a plaintiff fails to allege any injury as a result of alleged improper provisions, he or she does not have standing to bring a substantive due process claim. *See Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (affirming dismissal based on standing where plaintiff failed to allege any injury).

Here, Plaintiffs cannot and do not allege that they suffered any harm whatsoever as a result of Nassau County's alleged violations of the Due Process Clause. Plaintiffs allege, for example, that Defendants violated the Due Process Clause by "intentionally and effectively misinforming County residents via AROW" that their grievance claims were invalid. ¶ 267. Plaintiffs do not allege that they were among these County residents who were allegedly misinformed. Plaintiffs further allege that Defendants violated the Due Process Clause by "intentionally and effectively interfering with the rights and ability of certain persons to file grievances, specifically, nonwhite Property Owners and owners of property in nonwhite communities." ¶ 286. But Plaintiffs fail to allege that Defendants interfered with *their* rights or

abilities to file grievances – indeed, they could not possibly make such an allegation because all three Plaintiffs successfully used this allegedly discriminatory process to successfully challenge their own property assessment. *See* Background, *supra*. The fact that Plaintiffs are members of minority groups and claim that *other* members of the putative class of minority census tract Property Owners have faced discrimination does not confer standing upon Plaintiffs.

The fact that Plaintiffs did not suffer any actual injuries as a result of the County's assessment and grievance procedures means that they lack standing to bring their claims. Accordingly, the Complaint must be dismissed under Rule 12(b)(1) for lack of standing.

## III.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

As set forth above, this Court lacks subject matter jurisdiction over this action because the TIA requires that any action challenging the enforcement of a state or local tax – such as this action – be brought in state court, and Plaintiffs lack standing to bring their claims because they suffered no concrete and particularized injury. Thus, the Court need not determine whether Plaintiffs have adequately stated a claim. However, in the event this Court does not dismiss this action under Rule 12(b)(1), dismissal is also warranted under Rule 12(b)(6) because Plaintiffs have failed to state a claim under the Fair Housing Act, the U.S. Constitution, 42 U.S.C. § 1981, or the Nassau County Charter.

### A.   Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "[t]hreadbare recitals of the elements of a cause of action," or

"mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678 (quotations and citation omitted).[42]

**B.      Plaintiffs Fail to State a Claim under the Fair Housing Act**

Plaintiffs allege that the County's assessment freeze and grievance procedure violate Sections 3604(b), 3605, and 3617 of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, but the Complaint fails to set forth a cause of action under this statute.

There are virtually no decisions from any United States District Court or Court of Appeals addressing a claim that a state or local tax scheme violates the Fair Housing Act. The reason for this is straightforward: as set forth in Section I, *supra*, such claims are not properly before this Court pursuant to the TIA, which includes any claims under the FHA. *See, e.g.*, *U.S. v. Nassau*, 79 F. Supp. 2d at 195 (FHA claims alleging discriminatory tax assessment scheme barred from federal court by TIA).

Even if this case were properly before this court, the plain language of the FHA does not encompass challenges to state and local tax structures. Section 3604 of the FHA provides that "[i]t shall be unlawful…[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities connected therewith, because of race, color, religion, sex, or national origin." 42 U.S.C. § 3604(b). Likewise, § 3605 of the FHA prohibits discrimination in "real estate-related transactions," including "[t]he selling, brokering, or appraising of residential real property." Finally, § 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person…on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right

---

[42] Further, a plaintiff who lacks standing to bring a claim pursuant to Rule 12(b)(1) and/or Article III will necessarily fail to state a claim under Rule 12(b)(6). *See Epstein v. JPMorgan Chase & Co.*, No. 13-cv-4744, 2014 U.S. Dist. LEXIS 38628, at *2 (S.D.N.Y. Mar. 21, 2014) (finding that the plaintiff lacked standing under 12(b)(1) and denying a 12(b)(6) motion as moot because "[w]ithout jurisdiction a court cannot proceed at all in any cause" (citation and quotation omitted)).

33

granted or protected by section[s of the FHA]." ***None of these statutes*** in any way reference the levying, enforcement, or collection of a tax on real property, which is the issue in this case.[43]

C.   **Plaintiffs Fail to State a Claim for Violation of their Equal Protection Rights**

Plaintiffs likewise fail to establish that the County's assessment and grievance process violates their rights to equal protection under the U.S. Constitution.[44] In order to state a claim for violation of the equal protection clause, Plaintiffs must show that the County's assessment and tax process is not rationally related to any legitimate state interest, and indeed is "arbitrary" and constitutes "invidious discrimination." *Chasalow*, 202 A.D.2d at 501. They fail to do so.

In *Chasalow*, the Appellate Division reversed a trial court decision holding that the County's method of assessment of residential real property used at the time was unconstitutional. The *Chasalow* plaintiffs alleged that the Nassau County assessment system "caused such gross disparities in the tax burden imposed upon similarly-situated taxpayers as to create a constitutional violation under the Equal Protection Clause" as evidenced by the fact that the coefficient of dispersion for Class I property in Nassau County was higher than the standard coefficient of dispersion set by the New York State Board of Equalization and Assessment. *Id.* at 500.

---

[43] Historically, the FHA has been applied, for example, to cases involving constructive eviction of low-income tenants from a federally subsidized apartment complex (*see Green v. Konover Residential Corp.*, No. 3:95-cv-1984, 1997 U.S. Dist. LEXIS 18893, at *1 (D. Conn. Nov. 24, 1997)); a landlord's refusal to rent to an interracial couple (*see Frazier v. Rominger*, 27 F.3d 828 (2d Cir. 1994)); racial preferences in display ads for housing (*see Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993)); a state-supported facility's refusal to rent to a disabled woman (*see Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378 (D. Conn. 2009)); and allegations of racial discrimination in zoning policies (*see Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2d Cir. 2015)).

[44] Plaintiffs lay out multiple theories, styled as separate causes of action, as the bases for their equal protection and due process claims: "suspect classes of persons," "other classes of persons," "selective reassessment," "gross disparities," and "reclassification of property." However, all of these theories revolve around the same basic argument: Plaintiffs' allegation that Nassau County violated Plaintiffs' equal protection and due process rights by (i) implementing an assessment freeze and (ii) implementing a grievance procedure that Plaintiffs claim is not used by minority Property Owners, despite the fact that all Plaintiffs have utilized the procedure on numerous occasions, often successfully.

The Appellate Division soundly rejected this argument as a matter of law, noting that "[i]t is well settled that in the area of real property taxation, rough equality, not complete uniformity, is all that is required" to satisfy the constitutional right to equal protection *Id.* at 501, citing *Foss v. City of Rochester*, 65 N.Y.2d 247, 256-57 (1985). *See also Board of Managers of Acorn Ponds*, 197 A.D.2d at 620 (reversing decision mandating a reassessment of all Class I residential property in Nassau County, finding that the method of assessment described in *Chasalow* "was applied in a consistent manner with respect to all Class I property in Nassau County," and thus "it must be concluded that similarly situated [taxpayers were] treated uniformly" (quotation omitted)). Indeed, the Court of Appeals has unequivocally held that:

> Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose. Moreover, the statute enjoys a presumption of constitutionality which can be overcome only by the most explicit demonstration that [the] classification is a hostile and oppressive discrimination against particular persons and classes.

*Trump v. Chu*, 65 N.Y.2d 20, 25 (1985), *appeal dismissed*, 474 U.S. 915 (1985) (quotations and citations omitted).

Plaintiffs' allegations of selective reassessment do not save their equal protection claim because they do not allege that the County has selectively reassessed their property. Selective reassessment occurs when a taxing authority assesses specific parcels or properties uniquely rather than applying a uniform method of assessment throughout the authority's jurisdiction – for example, when a town assesses property pursuant to a "welcome neighbor" policy of arbitrarily increasing the assessments of new residents. *Corvetti v. Town of Lake Pleasant*, 227 A.D.2d 821, 823 (3d Dep't 1996); *see also Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, W. Va.*, 488 U.S. 336, 346 (1988) (equal protection violation possible when county

assessor valued recently purchased properties on the basis of recent purchase price, but did not modify assessments for land not recently sold). Here, Plaintiffs do not allege that their properties were assessed utilizing a different methodology than other Class I residential properties in the County. Indeed, Plaintiffs allege the assessment freeze at issue applied to all Class I residential properties in Nassau County. ¶¶ 68-69.

**D.** **Plaintiffs Fail to State a Claim for Violation of Due Process**

**1.** **Plaintiffs' Procedural Due Process Claims Should be Dismissed**

Plaintiffs' claims for alleged violations of their procedural due process rights should be dismissed because New York State, and Nassau County, provide wholly adequate post-assessment grievance procedures – so adequate, in fact, that all three Plaintiffs have already used such procedures to obtain reductions of the assessments of their respective properties. *Supra.* Due process is not violated if the plaintiff can redress his or her grievances in a meaningful post-deprivation procedure. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (noting that the plaintiff was not deprived of due process where the state provided an adequate post-deprivation remedy). "In the context of tax assessment, due process requires [only] an opportunity for the taxpayer's grievance to be heard." *Adams v. Schoenstadt*, 57 A.D.3d 1073, 1076 (3d Dep't 2008) (affirming dismissal of taxpayers' due process claims regarding property assessments where they had the opportunity to challenge their assessments). In *Adams*, the court noted that the petitioners, a group of Property Owners challenging an Essex County assessment process, "had the opportunity to challenge their assessments by filing a complaint with the board of assessment review...or commencing an RPTL Article 7 proceeding." *Id.*; *see also Abele v. Dimitriadis*, 53 A.D.3d 969, 972 (3d Dep't 2008) (dismissing due process claim because plaintiff had an opportunity to challenge property assessment by filing a complaint

with the Board of Assessment Review, commencing a proceeding pursuant to Article 7 of the RPTL, or through an Article 78 proceeding).

Here, Plaintiffs do not allege that they were unable to challenge their assessments – indeed, they could not possibly make such allegations because all of the Plaintiffs actually did so successfully. Plaintiffs' claims premised upon an alleged violation of their procedural due process rights must therefore be dismissed as a matter of law. *Acevedo v. Fischer*, No. 12-cv-6866, 2014 U.S. Dist. LEXIS 139057, at *33 (S.D.N.Y. Sept. 29, 2014) ("[P]laintiff's conclusory allegation of [due process] violations, without any indication of what aspect of required procedure was not provided, renders his due process claim insufficient." (citing *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994)).

### 2. Plaintiffs' Substantive Due Process Claims Should be Dismissed

Plaintiffs likewise fail to allege a violation of their substantive due process rights, and thus all claims premised on such a violation should be dismissed. The doctrine of substantive due process protects only those rights that are "fundamental" or "objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotation omitted) (reversing and remanding judgment in favor of petitioners where petitioners did not assert a fundamental right). Traditional interests protected by substantive due process include procreation, marriage, and the right to raise one's children as a parent. *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979). Indeed, "[s]ubstantive due process is an outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). It precludes governmental action that is so egregiously violative of rights as to be "arbitrary, conscience shocking, or oppressive in a constitutional sense," and not merely "incorrect or ill-advised." *T.S. Haulers Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 460 (E.D.N.Y. 2002) (internal citations omitted).

37

Conclusory allegations of "conscience shocking" behavior will not suffice – Plaintiffs must demonstrate that Nassau County's behavior is so egregious as to rise to the level of interfering with a fundamental constitutional right, such as bodily autonomy. *See Davidson*, 32 F.3d at 31 (conclusory allegations are insufficient to state a claim for violation of due process). They fail to do so. Plaintiffs do not allege that they were individually or collectively targeted by Nassau County in any way, nor that their rights to bodily autonomy were compromised in any way. They do not allege that Nassau County's assessment process singled them out or treated them differently than any other owner of Class I residential property in Nassau County. As set forth *supra*, the Complaint focuses on two policies that Plaintiffs claim are discriminatory – the assessment freeze and the grievance process. Far from targeting the Plaintiffs (or any other Property Owner) individually, as would be necessary to rise to the level of "arbitrary" or "conscience shocking," Plaintiffs acknowledge that the assessment freeze applied to ***all*** owners of Class I residential properties in Nassau County. ¶ 68. Further, as set forth herein, Plaintiffs cannot (and do not) plausibly allege that the assessment grievance process violated a substantive due process right when they themselves successfully used the same process on multiple occasions. Thus, all Plaintiffs' claims premised upon any such violation of substantive due process rights should be dismissed.

### E.    Plaintiffs' Remaining Claims Fail

Plaintiffs' claims under 42 U.S.C. § 1981 and the Nassau County Charter also fail as a matter of law. In order to state a claim under §1981, Plaintiffs must allege "that the defendant discriminated against him on the basis of race, …that the discrimination was intentional, …and that the discrimination was a substantial or motivating factor for the defendant's actions." *Jones v. W. Suffolk Boces*, No. CV-03-3252, 2008 U.S. Dist. LEXIS 13077, at *15 (E.D.N.Y. Feb. 20,

2008) (granting summary judgment for defendants where plaintiff failed to make out a prima facie case based on racial discrimination in violation of § 1981 (quotations omitted)).

In a case involving mortgage lending where plaintiffs alleged § 1981 claims based on alleged intentional racial discrimination, the court held that although plaintiffs "allege[d] that defendants were aware that a greater proportion of non-prime borrowers were minorities, this allegation is not enough to render the intentional racial discrimination claim plausible." *Rodriguez v. Bear Stearns Cos.*, No. 07-cv-1816, 2009 U.S. Dist. LEXIS 31525, at *25 (D. Conn. Apr. 14, 2009). Plaintiffs here do not allege that Nassau County's Freeze applied only to certain groups. ¶ 68. Plaintiffs allege only that the Freeze had a disparate impact on minority Property Owners. ¶ 71. Even if true (which the County denies), such claims of disparate impact are insufficient to state a claim under §1981. *Trezza v. The Hartford, Inc.*, No. 98-CV-2205, 1998 U.S. Dist. LEXIS 20206, at *24 (S.D.N.Y. Dec. 28, 1998) (plaintiff's "conclusory assertion [of] a disparate impact is insufficient to survive a motion to dismiss.").

Plaintiffs' claim for violation of § 603 of the Nassau County Charter likewise fails. Section 603(a) of the Charter (attached to Calcaterra Decl. as Exhibit RC-3) provides that:

> It shall be the duty of the Assessor to adopt such rules and regulations as will establish an equitable and scientific system of assessing property for taxation. The rules so adopted, and all amendments thereof, shall be published on the county website and made available to any taxpayer of the County upon application to the Assessor.

As set forth above, Plaintiffs do not allege that the Freeze applied only to certain classes of Property Owners, or that it was applied differently to different Property Owners based on race. Further, Plaintiffs do not allege that minority Property Owners were barred from utilizing the grievance procedure. And finally, despite Plaintiffs' conclusory allegation that the County posted "outdated" information about the online filing process (which the County denies), they do not

allege that the County failed to publish the "rules and regulations" surrounding the assessment system. ¶ 104. As set forth in *Chasalow*, "[i]t is well settled that in the area of real property taxation, rough equality, not complete uniformity, is all that is required." 202 A.D.2d at 502. As set forth above, while the *Coleman* plaintiffs' claim for violation of § 603 was not dismissed, those plaintiffs alleged that their properties were over-assessed, alleging precise dollar amounts. Plaintiffs here do not, and cannot, make any comparable allegation. Thus, like Plaintiffs' other claims, their allegation that Nassau County violated § 603 of the Charter is without merit and should be dismissed.

## **CONCLUSION**

For the reasons above, the Court should dismiss the Complaint in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
   October 3, 2019

        **WOLF HALDENSTEIN ADLER**
        **FREEMAN & HERZ LLP**

        Regina M. Calcaterra
        Daniel Tepper
        Lydia Keaney Reynolds
        Veronica Bosco
        270 Madison Avenue
        New York, New York 10016
        (212) 545-4600
        Calcaterra@whafh.com
        Tepper@whafh.com
        Reynolds@whafh.com
        Bosco@whafh.com

                806291