**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WAYNE J. HALL, REINA HERNANDEZ, and FLORIDALMA PORTILLO, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>NASSAU COUNTY, DEPARTMENT OF ASSESSMENT OF NASSAU COUNTY, ASSESSMENT REVIEW COMMISSION OF NASSAU COUNTY, and DOES 1-25,<br><br>      Defendants. | Case No.: 2:19-cv-00893-LDH-CLP<br><br>**Served December 5, 2019**<br><br><u>**Oral Argument Requested**</u> |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
<u>**IN FURTHER SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**</u>

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

*Counsel to Defendants Nassau*
*County, Department of Assessment*
*of Nassau County, and Assessment*
*Review Commission of Nassau*
*County*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.   PLAINTIFFS' ATTEMPTS TO EVADE THE TIA FAIL ............................................ 2

    A.   The TIA Bars Plaintiffs' Claims for Injunctive Relief ................................. 2

    B.   New York State Provides a Plain, Speedy, and Efficient Remedy ...................... 5

    C.   Principles of Comity Bar Plaintiffs' Damages Claim ............................................ 9

II.   PLAINTIFFS LACK STANDING ............................................................................. 12

    A.   Article III Standing ...................................................................................... 12

    B.   The Fair Housing Act.................................................................................... 13

    C.   Equal Protection and Due Process Under the Fourteenth Amendment ............... 14

III.   PLAINTIFFS FAIL TO STATE A CLAIM ....................................................... 14

CONCLUSION ................................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                   **<u>Page(s)</u>**

*Bernard v. Village of Spring* Valley,
   30 F.3d 294 (2d Cir. 1994)...................................................................................5, 11

*Brandon v. Chefetz*,
   106 A.D.2d 162 (1st Dep't 1985) ...............................................................................7

*Cal. v. Grace Brethren Church*,
   457 U.S. 393 (1982)..................................................................................................5, 7

*Chasalow v. Board of Assessors*,
   202 A.D.2d 499 (2d Dep't 1994)..............................................................................15

*Coleman v. Seldin*,
   181 Misc. 2d 219 (Sup. Ct., Nassau Co. 1999)............................................... *passim*

*Connor B. ex rel. Vigurs v. Patrick*,
   771 F. Supp. 2d 142 (D. Mass. 2011) ......................................................................12

*Doe v. Cuomo*,
   755 F.3d 105 (2d Cir. 2014)......................................................................................14

*Ed Guth Realty, Inc. v. Gingold*,
   34 N.Y.2d 440 (1974) .................................................................................................8

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
   737 F.3d 228 (2d Cir. 2013)........................................................................................7

*Fair Assessment in Real Estate Ass'n v. McNary*,
   454 U.S. 100 (1981)....................................................................................................4

*Four K. Grp., Inc. v. NYCTL 2008-A Trust*,
   No. 12-cv-2135, 2013 U.S. Dist. LEXIS 53591 (E.D.N.Y. Apr. 15, 2013) ...............5

*Franchise Tax Bd. v. Alcan Aluminum*,
   493 U.S. 331 (1990)....................................................................................................7

*Georgetown Prop. Owners Ass'n v. Georgetown*,
   No. 01-881-SLR, 2002 U.S. Dist. LEXIS 19723 (D. Del. Sept. 27, 2002) ................6

*Great Atl. & Pac. Tea Co. v. Kiernan*,
   42 N.Y.2d 236 (1977) .................................................................................................8

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
   101 F.3d  877 (2d Cir. 1996)....................................................................................................15

*Hibbs v. Winn*,
   542 U.S. 88 (2004)................................................................................................... *passim*

*Hickmann v. Wujick*,
   488 F.2d 875 (2d Cir. 1973).....................................................................................................5

*I.L. v. Alabama*,
   739 F.3d 1273 (11th Cir. 2014) .............................................................................................11

*Joseph v. Hyman*,
   659 F.3d 215 (2d Cir. 2011)............................................................................................10, 11

*Kraebel v. New York City Dep't of Housing Preservation & Dev.*,
   959 F.2d 395 (2d Cir. 1992), *cert. denied*, 506 U.S. 917 (1992)................................................5

*Krugman v. Bd. of Assessors*,
   141 A.D.2d 175, 180 (2d Dep't 1988) ......................................................................................9

*Legal Aid Soc'y v. New York City Police Dep't*,
   274 A.D.2d 207 (1st Dep't 2000) ..............................................................................................6

*Levin v. Commerce Energy, Inc.*,
   560 U.S. 413 (2010)......................................................................................................9, 10, 11, 12

*Long Island Lighting Co. v. Town of Brookhaven*,
   889 F.2d 428 (2d Cir. 1989)..............................................................................................5, 7, 9

*Luessenhop v. Clinton County*,
   466 F.3d 259 (2d Cir. 2006)......................................................................................................4

*Lynch v. Alabama*,
   No. 08-S-450-NE, 2011 U.S. Dist. LEXIS 155012 (N.D. Ala. Nov. 7, 2011)...........................11

*Miller v. N.Y. Div. of Tax Appeals*,
   480 F. Supp. 2d 574 (E.D.N.Y. 2007) ..................................................................................5, 9

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
   701 F. Supp. 2d 568 (S.D.N.Y. 2010).....................................................................................14

*O'Leary v. Town of Huntington*,
   No. 11-CV-3754, 2012 U.S. Dist. LEXIS 126086 (E.D.N.Y. Sept. 5, 2012) ...........................15

*Ousmane v. City of New York*,
  No. 402648/04, 2005 N.Y. Misc. LEXIS 841 (Sup. Ct., N.Y. Co. Apr. 13, 2005) .................7, 8

*Palmieri v. Town of Babylon*,
  No. 01-1399, 2006 U.S. Dist. LEXIS 27694 (E.D.N.Y. Jan. 6, 2006) ......................................13

*Puglisi v. Underhill Park Taxpayer Ass'n*,
  947 F. Supp. 673 (S.D.N.Y. 1996)..........................................................................................13

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981)...................................................................................................................6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..............................................................................................................12

*Stern v. City of N.Y.*,
  No. 17-CV-4973, 2019 U.S. Dist. LEXIS 50518 (E.D.N.Y. Mar. 25, 2019)............................14

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  135 S. Ct. 2507 (2015)..............................................................................................................15

*Tully v. Griffin, Inc.*,
  429 U.S. 68 (1976)......................................................................................................................5

*United States v. Nassau*,
  79 F. Supp. 2d 190 (E.D.N.Y. 2000) .............................................................................1, 9, 14

*Vaughn v. Consumer Home Mortg. Co.*,
  297 F. App'x 23 (2d Cir. 2008) ...........................................................................................12-13

*Wetzel v. Town of Orangetown*,
  308 F. App'x 474 (2d Cir. 2009) .........................................................................................12, 13

*Youth Alive v. Hauppauge Sch. Dist.*,
  No. 08-CV-1068, 2012 U.S. Dist. LEXIS 148086 (E.D.N.Y. Oct. 12, 2012)...........................14

## STATUTES AND RULES

S.1505-C. 242nd Leg., 2019 Sess. (N.Y. 2019), Part J ....................................................................1

42 U.S.C. § 1981.............................................................................................................................14

Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA").........................................................13, 14, 15

Fed. R. Civ. P.
   12(b)(6) ......................................................................................................14, 15
   23 ..........................................................................................................................7
   23(a) .....................................................................................................................7
   23(b) .....................................................................................................................7
   23(b)(1)(a) ...........................................................................................................7
   23(b)(1)(b) ...........................................................................................................7
   23(b)(2) ................................................................................................................8
   23(b)(3) ................................................................................................................8

Nassau County Charter ............................................................................................14

NY CPLR
   901.........................................................................................................................7
   901(a) ....................................................................................................................7

Tax Injunction Act of 1937, 28 U.S.C. § 1341 ("TIA") ....................................... *passim*

Defendants Nassau County, DOA and ARC respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the Complaint.[1]

## INTRODUCTION

Plaintiffs try to distract the Court from the fatal infirmities to their Complaint by cherry-picking from Defendants' papers and incorrectly claiming the County has "reverted to its pre-*Coleman* policies." Opp. at 6.[2] Plaintiffs ignore that the post-*Coleman* assessment system is entirely different and the many changes made to the County assessment system. Before *Coleman*, Class I residential properties were assessed using 1938 construction values and 1964 land values.[3] Since the 2003 reassessment after *Coleman*, the County assesses Class I property based on market value at a uniform level.[4] Now, beginning with the 2020-2021 assessment roll, properties are assessed using market value at a uniform rate of 0.1 percent.[5] New York State has enacted legislation authorizing the County to enact a local law to transition increases in assessment that would otherwise result from the pending reassessment taking into account the new level of assessment. *See* S.1505-C. 242nd Leg., 2019 Sess. (N.Y. 2019), Part J. Under this legislation, it is estimated that fifty-five percent of *all* Property Owners will receive lower taxes.[6]

---

[1] Capitalized terms not defined herein have the same meaning as in Defendants' Memorandum of Law in Support of Motion to Dismiss Class Action Complaint. The "¶" symbol refers to paragraphs in the Complaint unless noted.

[2] *See Coleman v. Seldin,* 181 Misc. 2d 219 (Sup. Ct., Nassau Co. 1999). A chart comparing Plaintiffs' mischaracterizations with Defendants' actual statements is attached to the accompanying Reply Declaration of Regina M. Calcaterra in Further Support of Motion to Dismiss ("**Calcaterra Reply Decl**.") as Exhibit RC-5.

[3] *See United States v. Nassau,* 79 F. Supp. 2d 190, 191 (E.D.N.Y. 2000).

[4] *See* "Information for Property Owners," Nassau County, *available at* https://archive.nassaucountyny.gov/agencies/ ARC/propertyowners.html#level (last accessed December 5, 2019).

[5] *See* "Taxpayer Protection Plan," Nassau County, *available at* https://www.nassaucountyny.gov/4638/Taxpayer-Protection-Plan (last accessed December 4, 2019).

[6] *See* "Taxpayer Protection Plan Passes in State Budget – Curran Submits Local Legislation," Nassau County, *available at* https://www.nassaucountyny.gov/CivicAlerts.aspx?AID=7175 (last accessed December 4. 2019). A study by Newsday concluded the reassessments "are well within every major professional standard of accuracy and fairness" and are "a result the experts uniformly said was about as good as it gets." *See* "Nassau reassessment more fair and accurate, analysis shows," Newsday, *available at* https://www.newsday.com/long-island/investigations/ nassau-assessment-curran-mangano-1.30240729 (last accessed December 4, 2019).

## ARGUMENT

As set forth in the County's moving papers, the Court lacks subject matter jurisdiction over this dispute under the Tax Injunction Act of 1937, 28 U.S.C. § 1341 ("**TIA**") and because Plaintiffs lack standing. Plaintiffs also fail to state any claim under which relief may be granted.

## I.   PLAINTIFFS' ATTEMPTS TO EVADE THE TIA FAIL

### A.   The TIA Bars Plaintiffs' Claims for Injunctive Relief

Since the TIA was enacted in 1937, the Supreme Court, Second Circuit, and many other courts have consistently held that the TIA bars federal courts from "enjoin[ing], suspend[ing], or restrain[ing] the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341. Plaintiffs argue that the TIA does not apply because they do not seek to reduce the total revenue flow of Nassau County, not even by a single dollar. Opp. at 12. Putting aside the error of this statement – Plaintiffs seek $1.7 billion in assessed tax reimbursements – actions such as this to "enjoin, suspend, or restrain the assessment" of a state tax are barred by the TIA.

Plaintiffs erroneously argue that *Hibbs v. Winn*, 542 U.S. 88 (2004), radically departed from decades of TIA jurisprudence to hold that actions to enjoin, suspend, or restrain the assessment of a local real property tax are somehow exempt from the TIA.[7] Opp. at 9-18. This is simply not the case. The *Hibbs* Court concluded that an action that neither seeks a tax refund nor involves a tax assessment is not implicated by the TIA. 542 U.S. at 110 (collecting cases). Plaintiffs plainly challenge a tax assessment and seek a refund of assessed taxes paid by the putative class. ¶¶ 1, 57-108, Complaint Prayer for Relief, ¶ d. This action is therefore barred by the TIA.

---

[7] *Hibbs* was brought by a group of taxpayers challenging a state law giving tax credits for scholarships awarded to children attending private religious schools as violating the Establishment Clause. 542 U.S. at 95. Two issues were considered in *Hibbs*: (i) "the scope of the term 'assessment' as used in the TIA"; and (ii) whether the TIA "was intended to insulate state tax laws from constitutional challenge in lower federal courts even when the suit would have no negative impact on tax collection." *Id.* at 94. Under *Hibbs,* this action must be dismissed for lack of subject matter jurisdiction.

*First*, *Hibbs* held that the term "assessment" in the TIA did not apply to tax *credits* like those at issue in *Hibbs* because "assessed" refers the Government's "collection-propelling function." 542 U.S. at 102.[8] Here, the Complaint explicitly challenges Nassau County's "property tax assessment system." ¶ 3. Thus, under *Hibbs*, this action falls within the TIA. Even if Plaintiffs did not seek a $1.7 billion tax assessment refund, this action, which seeks a "permanent injunction that restrains Defendants . . . from unlawfully violating and interfering with Plaintiffs' and putative Class members' civil rights . . . and directing Defendants to take all affirmative steps necessary to remedy the effects of the . . . conduct described herein," is plainly barred by the TIA. Complaint, Prayer for Relief, ¶¶ b, c.

*Second*, in determining that the tax credits at issue in *Hibbs* would have no negative impact on revenue flow, the Court noted at the outset that the plaintiffs sought "prospective relief only." 542 U.S. at 99. Only then did the Court move forward with its analysis of whether the credits were an "assessment" of taxes. *Id.* The Court distinguished the situation presented where only injunctive relief was sought from "federal litigation to avoid paying state taxes (*or to gain a refund of such taxes*)." *Id.* at 106 (emphasis added). Plaintiffs erroneously argue that this is dicta because *Hibbs* did not involve a claim for damages. *See* Opp. at 10. However, the Court in *Hibbs* distinguished the case from others where plaintiffs sought damages in the form of a tax refund. *Id.* at 106. And here, of course, Plaintiffs seek damages in the form of a refund of assessed taxes. Complaint, Prayer for Relief, ¶ d. Moreover, the Court did not discuss whether those other cases were dismissed under the TIA or principles of comity, as it was immaterial since all such actions were dismissed in any event. 542 U.S. at 106.

---

[8] At the September 12, 2019 hearing, the Court noted that the distinction "with respect to the assessment versus the credit is an important one." Transcript of Proceedings held on September 12, 2019 ("**Tr**.") at 21:23-24. An excerpt of the relevant portions of the transcript is attached to the Calcaterra Reply Decl. as Ex. RC-6.

3

Thus, Plaintiffs' argument that *Hibbs* overrules decades of case law holding that actions such as this which challenge tax assessments, is erroneous. Indeed, subsequent post-*Hibbs* decisions continue to find that such challenges belong in state court under the TIA.

Plaintiffs' only other authority for their misreading of *Hibbs – Luessenhop v. Clinton County*, 466 F.3d 259 (2d Cir. 2006) – is equally unavailing. Plaintiffs neglect to mention that *Luessenhop* did not involve a constitutional challenge to a tax assessment, but rather to "the notice of foreclosure provided by the taxing authority of a state." 466 F.3d at 261. At the outset, *Luessenhop* notes that plaintiffs in that case do not "contest the assessments of their property, or the amount of taxes claimed due." *Id.* This is *precisely* what the Plaintiffs challenge here. ¶ 3.

Plaintiffs also argue that *Hibbs* and *Luessenhop* indicate that the TIA does not apply to an action challenging a method of assessing state taxes so long as the plaintiffs do not seek to reduce the overall revenue flow. Even if that described Plaintiffs' case – which it does not, as Plaintiffs explicitly seek a massive refund – it is not the holding of those cases. Rather, these cases hold that the TIA does not implicate actions that *do not challenge the assessment of a tax at all. Hibbs*, 542 U.S. at 102; *Lussenhop*, 466 F.3d at 261. Plaintiffs' case does, and must therefore be brought in state court under the TIA.

Finally, Plaintiffs argue – wholly unsupported by any authority – that the TIA only bars cases that would reduce the taxes *currently* flowing to Nassau County. Opp. at 16. Neither the text of the TIA nor any of the cases applying it limit the TIA to actions seeking to reduce future tax funds. Indeed, *Hibbs* explicitly distinguished the complaint there from "federal litigation to avoid paying state taxes (or to gain a *refund* of such taxes)." 542 U.S. at 106 (emphasis added), citing *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 105-06 (1981) (plaintiffs seeking damages arising from unequal taxation of real property barred from federal court). By

4

seeking the refund of assessed taxes already paid, Plaintiffs improperly attempt to use federal courts to interfere with state revenue flow, thereby implicating the TIA. *Hibbs*, 542 U.S. at 106; *Cal. v. Grace Brethren Church*, 457 U.S. 393, 410 (1982) (TIA bars declaratory and injunctive relief pertaining to administration of state taxes). Far from departing from the established rule of law in *McNary* and *Grace Brethren Church, Hibbs* held that actions seeking damages in the form of a tax refund – as this one does – belong in state, not federal court.[9] 542 U.S. at 106.

### B.   New York State Provides a Plain, Speedy, and Efficient Remedy

Plaintiffs' argument that New York state courts do not provide a "plain, speedy and efficient remedy" is belied by *Coleman* and decades of other cases to the contrary.[10] Plaintiffs contrive multiple blunderbuss arguments that range from whether a consent decree can be maintained in New York State court, to the premature presumption that they may not meet class certification requirements due to the discretionary governmental operations rule, to the manufactured inability to obtain values of property in the Nassau County. These arguments are a desperate attempt to remain in a court that lacks subject matter jurisdiction. The *Coleman* order proves that New York State courts can and will afford an adequate process.

---

[9] Plaintiffs argue that this means that the damages claims in *Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 431 (2d Cir. 1989) ("**LILCO**") and *Bernard v. Village of Spring* Valley, 30 F.3d 294 (2d Cir. 1994) should have been barred under the TIA instead of by principles of comity. In making this argument, Plaintiffs encourage the Court to approach this case in a piecemeal fashion contrary to how courts have consistently considered TIA claims. *See* Opp. at 18. Instead, as the Supreme Court noted in *Hibbs*, the Court must consider the totality of an action in determining whether the TIA applies. 542 U.S. at 99. Comity is discussed in greater detail in Point I(C), *infra*.

[10] *See Coleman; see also Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973) ("The remedies afforded for review of real property assessments are adequate"); *Miller v. N.Y. Div. of Tax Appeals*, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007) ("The specific remedies available to [] plaintiff[s] are plain, speedy and efficient….") (quotation omitted); *Tully v. Griffin, Inc.*, 429 U.S. 68 (1976) (New York State courts provide a "plain, speedy and efficient remedy" to taxpayers and applying TIA to divest federal court of jurisdiction over claims challenging collection of state taxes); *LILCO*, 889 F.2d at 431 (New York State court remedies are sufficient for purposes of TIA); *Kraebel v. New York City Dep't of Housing Preservation & Dev.*, 959 F.2d 395, 400 (2d Cir. 1992), *cert. denied*, 506 U.S. 917 (1992) (rejecting argument that New York State court remedies are inadequate); *Four K. Grp., Inc. v. NYCTL 2008-A Trust*, No. 12-cv-2135, 2013 U.S. Dist. LEXIS 53591, at *21 (E.D.N.Y. Apr. 15, 2013) (federal court lacks subject matter jurisdiction over plaintiff's challenge to city's property tax assessment).

*First*, the Court already saw through Plaintiffs' argument that "rather than showing that the state Court is an effective place to seek remedy, *Coleman* shows the opposite. . . .[S]oon after the consent decree expires, the political winds change in Nassau County. They go back, they reinstitute the exact same type of policies that merited *Coleman* in the first place." The Court responded "[t]hat wasn't by virtue of where the case resided. That could have happen[ed] if a consent decree was issued out of a federal court, and it expired…" Tr. at 14:12-25.[11] Plaintiffs nonetheless spend several pages to the specious argument that, somehow, the New York State court system cannot possibly provide them the relief sought. Plaintiffs make this case in spite of the fact that the *Coleman* Order, which Plaintiffs mention over 70 times in their Complaint as the platinum standard for Nassau County's assessment methods, was issued by a New York State court in a suit brought in state court. In reality, Plaintiffs wish to avoid state court for one reason only – they are concerned about their ability to obtain *in terrorem* class-wide damages with the attendant larger attorneys' fees. But such concerns do not render the New York State court system inadequate. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981) (TIA requires only that a "state court remedy…meet[] certain minimal *procedural* criteria" (emphasis in original)); *Georgetown Prop. Owners Ass'n v. Georgetown*, No. 01-881-SLR, 2002 U.S. Dist. LEXIS 19723, at *4 n.1 (D. Del. Sept. 27, 2002) (sufficient state law remedies need not "provide the full panoply of rights and remedies afforded under the Fair Housing Act").

*Second*, Plaintiffs argue that their attempt to obtain class-wide relief in state court may be barred by the "government operations rule." This discretionary rule provides that class actions may be deemed unnecessary when a plaintiff challenges a government action because the injunctive relief obtained by one class member would apply to all prospective class members. *See, e.g.*, *Legal Aid Soc'y v. New York City Police Dep't*, 274 A.D.2d 207, 213 (1st Dep't 2000)

---

[11] *See* Calcaterra Reply Decl. Ex. RC-6.

("[W]here governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of *stare decisis* . . . class action relief is not necessary") (citation and quotation omitted). Even if the government operations rule applies to Plaintiffs' claims – which is uncertain– the question of whether the Court will certify a class in no way renders the New York State court system incapable of providing Plaintiffs an adequate remedy.[12] *See, e.g.*, *LILCO*, 889 F.2d at 431 (New York State court remedies are sufficient for purposes of TIA).[13] Moreover, Plaintiffs, whose counsel reports itself to have decades of experience in complex class actions,[14] state that the governmental operations rule is the sole reason why their putative class would not be certified in New York State Court. The Plaintiffs, however, would have to first overcome the significant burden of proving that their putative class could actually be certified in the first instance[15], since the disparities that Plaintiffs allege applied to *all* Property Owners who failed to file in *all* census tracts, not just minority census tract Property Owners. Plaintiffs should also be well aware that a similar burden will be required in federal court.[16]

---

[12] The government operations rule is "not absolute" and "[c]lass certification does not cease to be a matter within the court's discretion simply because governmental operations are at issue, though it should be used cautiously in such cases." *Ousmane v. City of New York*, No. 402648/04, 2005 N.Y. Misc. LEXIS 841, at *29-30 (Sup. Ct., N.Y. Co. Apr. 13, 2005).

[13] Plaintiffs' authority actually bolsters' Defendants' position. *See Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331 (1990) (plaintiffs did *not* allege that their remedy was "uncertain or speculative" because the California tax refund procedure (like that of New York) is a "plain, speedy, and efficient remedy"); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 737 F.3d 228, 234 (2d Cir. 2013) (Vermont offers a "plain, speedy, and efficient remedy" and indeed "the Supreme Court has furthermore indicated that the remedial exception to the TIA should be 'construe[d] narrowly'" (quoting *Grace Brethren Church*, 457 U.S. at 413)).

[14] *See* "Practice Areas – Securities," Kirby McInerney, *available at* https://www.kmllp.com/Securities (last accessed December 5, 2019)

[15] Parties seeking class certification must meet all of the following requirements: numerosity of the class; commonality of the class's questions of law or fact; typicality of the representative parties' claims or defenses; and fair and adequate representation by the representative parties.  CPLR 901(a)(1-4).

[16] CPLR § 901 is based on Rule 23, with a few differences. *See Brandon v. Chefetz*, 106 A.D.2d 162, 168 (1st Dep't 1985) ("CPLR Article 9 is modeled on Rule 23 of the Federal Rules of Civil Procedure."). First, while section 901 includes all of the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of the named representatives), Rule 23 further requires that the action fit into one of the 23(b) categories: separate actions would risk inconsistent or varying adjudications (23(b)(1)(a)); one class member's judgment would hurt the others' ability to protect their interests because of multiple claimants to a limited fund (23(b)(1)(b)); injunctive or declaratory

Further, New York State courts have established four exceptions to the discretionary government operations rule for situations in which *stare decisis* will not adequately protect plaintiffs seeking class certification against a municipal entity: (1) plaintiffs show that the state is unlikely to comply with the order coming from the individual suit; (2) plaintiffs seek not only declaratory and injunctive relief but also money damages for each member of the class; (3) the government defendant is joined in the lawsuit with a private party; and (4) the plaintiffs are elderly individuals with limited ability to pursue separate actions. *See generally Ousmane,* 2005 N.Y. Misc. LEXIS 841. Although the County is not conceding any of these exceptions would apply, New York State courts are well-prepared to provide adequate remedies where appropriate.

Finally, Plaintiffs argue that New York State courts are inadequate because the court may limit evidence of comparable properties to those in the Plaintiffs' "immediate vicinity," Opp. at 20. However, Plaintiffs' own authority notes that "[r]eceiving evidence of sales of property beyond the immediate vicinity of the subject property is a matter resting in the sound discretion of the trial judge.'" *Great Atl. & Pac. Tea Co. v. Kiernan*, 42 N.Y.2d 236, 241 (1977) (concluding lower court did *not* err in considering broader regional data in determining property value) (citation, quotation and italics omitted). Moreover, evidence of comparable properties goes to *market value* and not to *assessed value*, which is the issue in Plaintiffs' Complaint. *See* Opp. at 20-21; *see also Ed Guth Realty, Inc. v. Gingold*, 34 N.Y.2d 440, 446 (June 26, 1974) ("There is a two-step process in proving an inequality case. The petitioner must prove a proper ratio of *assessed value* to *fair market value*, and then he must establish the fair market value of his property…. [R]atio times market value equals proper assessed valuation." (emphasis

---

classwide relief is appropriate (23(b)(2)); or common questions predominate so that the class action is superior to other methods (23(b)(3)).

added)).[17]

Plaintiffs cannot point to a single example where state courts refused to consider such evidence, making it unable to render an adequate remedy, despite the plethora of actions challenging New York State taxes that have been dismissed for lack of jurisdiction under the TIA. *See, e.g.*, *U.S. v. Nassau,* 79 F. Supp. at 191 (claims alleging discrimination in assessment of property taxes dismissed pursuant to TIA); *Miller,* 480 F. Supp. 2d at 579 (New York State remedies adequate for purposes of the TIA); *LILCO*, 889 F.2d at 431 (New York State court remedies are sufficient for purposes of TIA).

### C.     Principles of Comity Bar Plaintiffs' Damages Claim

Comity has been applied time and again by the Supreme Court and the Second Circuit to conclude that actions seeking damages in the form of state tax refunds belong in state court. *See, e.g.*, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010) (comity "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction" out of respect for state function); *McNary*, 454 U.S. 100 (comity divests federal court of jurisdiction over action challenging unequal assessment of real property taxes).

In *McNary*, the Court held that principles of comity divested the federal court of jurisdiction because damages actions "would be no less disruptive of [a state's] tax system than would the historic equitable efforts to enjoin the collection of taxes, efforts which were early held barred by considerations of comity." 454 U.S. at 113. Ultimately, whether they are dismissed under the TIA or principles of comity (which provide that damages claims arising from an allegedly improper state law must be left to the state courts), virtually *all* such damages

---

[17] Under RPTL Article 7, "[t]he grounds for reviewing an assessment shall be that the assessment to be reviewed is excessive, *unequal* or unlawful, or that real property is misclassified." RPTL § 706 (emphasis added). While enumerated grounds for RPTL Article 7 review do not contemplate challenges to the method of assessment, pursuant to CPLR 103 (c), a state court may remedy this by converting the RPTL Article 7 proceeding into a CPLR Article 78 proceeding. *See Krugman v. Bd. of Assessors*, 141 A.D.2d 175, 180 (2d Dep't 1988).

claims are ultimately dismissed from federal court.

Astoundingly, nowhere in Plaintiffs' extensive discussion about comity do they reference *McNary*, the key Supreme Court decision addressing the tension between the principles of comity and the federal court's desire to adjudicate claims alleging discrimination by the government. *McNary* examined those ostensibly competing principles and determined that "as to such actions … the principle of comity controls," 454 U.S. at 105, and that federal courts lacked jurisdiction over an action challenging unequal taxation of real property.

Plaintiffs instead rely on *Levin*, where the Court distinguished the case before it – challenging an allegedly discriminatory state tax – from *Hibbs*. As the Second Circuit noted in *Joseph v. Hyman*, 659 F.3d 215, 219 (2d Cir. 2011):

> *Levin* … was distinguishable from *Hibbs* based on three factors present in *Hibbs*, but absent in *Levin*, that counseled in favor of federal court adjudication despite the general rule of comity: (1) the legislation at issue "employ[ed] classifications subject to heightened scrutiny…; (2) the plaintiffs were true "'third parties' whose own tax liability was not a relevant factor"; and (3) both federal and state courts had access to identical remedies because the claim concerned tax credits and thus was not subject to the constraints of the TIA.

(quoting *Levin*, 560 U.S. at 426-30). These factors all weigh in favor of applying principles of comity here. Indeed, *Levin* cautions against applying *Hibbs* too broadly to restrict comity's compass, noting that *Hibbs* "has a more modest reach" and that "our precedents affirm that the comity doctrine is more embracive than the TIA." 560 U.S. at 424.

**First**, the regulatory structure at issue in this action – Nassau County's tax assessment system – does *not* employ classifications subject to heightened scrutiny.[18] While Plaintiffs claim that Nassau County's tax assessment discriminates against minority Property Owners, nothing in Nassau County's tax code or other relevant regulation references a Property Owner's race, and

---

[18] In contrast, the tax credit legislation at issue in *Hibbs* referenced religious schools, thereby implicating "a right that was unquestionably fundamental, concerning the establishment of religion." *Joseph*, 659 F.3d at 219.

Nassau County makes *no* such classifications of Property Owners. Plaintiffs argue that the Court should not apply principles of comity simply because their action alleges racial discrimination. That argument is rejected by the Supreme Court in *McNary*. 454 U.S. at 105.[19]

**Second**, unlike the *Hibbs* plaintiffs, Plaintiffs here are not "third parties whose own tax liability was not a relevant factor." *Joseph*, 659 F.3d at 219, citing *Levin*, 560 U.S. at 430. Here, Plaintiffs bring claims on behalf of themselves and similarly situated Nassau County Property Owners. ¶¶ 197-205. Thus, this factor plainly weighs in favor of comity. Tellingly, Plaintiffs omit the second *Levin* factor from their analysis despite its clear relevance. *See* Opp. at 23-27.

**Third**, because this action involves a tax assessment and thus *is* "subject to the constraints of the TIA," federal and state courts do *not* have access to identical remedies in this action because the federal courts are explicitly barred from granting injunctive relief under the plain language of the TIA. *See, e.g.*, *Bernard*, 30 F.3d at 297 (federal court lacks jurisdiction over action challenging a state tax law). Thus, as in *Levin* (where the plaintiffs did not even attempt to obtain injunctive relief, knowing that such claims would be barred by the TIA), the reforms sought by Plaintiffs would require an overhaul of Nassau County's tax code, and therefore "if the [state tax] scheme is indeed unconstitutional, surely the [state] courts are better positioned to

---

[19] Plaintiffs solely rely on one Alabama district court decision with no precedential weight in this Court, involving a completely different claim that is more similar to *Hibbs* than to this case. In *Lynch v. Alabama*, No. 08-S-450-NE, 2011 U.S. Dist. LEXIS 155012 (N.D. Ala. Nov. 7, 2011), the court found that the TIA and principles of comity did not bar from federal court a claim made by third-party plaintiffs challenging certain sections of the Alabama constitution as racially discriminatory in violation of the U.S. Constitution. The court found that comity did not apply because, while "[t]he Alabama courts may indeed be better suited than this court for the task of fashioning a new property tax system, if one is constitutionally required…this court is better suited…for determining whether the United States Constitution has been violated, *and that is the only relief plaintiffs have requested here.*" *Id.* at 177 (emphasis added). Here, unlike in *Lynch*, Plaintiffs seek extensive declaratory and injunctive relief that would essentially re-write the Nassau County property tax assessment system. Complaint, Prayer for Relief, ¶¶ b, c. On appeal, the Eleventh Circuit never considered comity because the defendant abandoned the argument. *I.L. v. Alabama*, 739 F.3d 1273, 1285 (11th Cir. 2014). In *I.L. v. Alabama* the Eleventh Circuit succinctly summarized *Hibbs* as standing "for the proposition that *third-party challenges* to the validity of state taxing schemes fall outside the ambit of the Tax Injunction Act *if* the challenges, were they to prove successful, would result in the *increase* of the tax liabilities of others (and therefore an increase in tax revenues to the state)." 739 F.3d at 1283 (emphasis added). Unlike *I.L.*, this is not a third-party challenge, and Plaintiffs do not seek to *increase* revenue to the state – as Plaintiffs admit, at best, their requested relief would have neutral effect on state tax revenue. *See* Opp. at 13.

11

determine … how to comply with the mandate of equal treatment." 560 U.S. at 429.

Finally, Plaintiffs argue that "Defendants raise comity only in response to Plaintiffs' claims for monetary damages…. Thus, the TIA's potential limitation on the Court's ability to fashion equitable relief is irrelevant." Opp. at 25. But nothing is *more* relevant than the TIA's absolute limitation on this Court's jurisdiction as in *Levin, McNary,* and countless other cases, the principle of comity precludes this court from awarding money damages.

## II.   <u>PLAINTIFFS LACK STANDING</u>

### A.   <u>Article III Standing</u>

Plaintiffs ignore the "irreducible constitutional minimum of standing," which requires (1) injury in fact, (2) that is fairly traceable to the conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Wetzel v. Town of Orangetown*, 308 F. App'x 474, 476 (2d Cir. 2009). Although Plaintiffs contend they "need not allege actual harm beyond the invasion of [a] private right," Opp. at 27, "even in the context of a statutory violation[,]" Article III standing requires an injury that is "concrete" and "actually exist[s]." *Spokeo*, *Inc. v. Robins,* 136 S. Ct. 1540, 1547, 1549-50, 1553.

Plaintiffs mischaracterize the requirements of Article III standing because they cannot meet them. Plaintiffs fail to assert their own legal rights and interests, and refer only to harm allegedly caused to "*all members*" of the putative class. *See* Opp. at 29-30 (emphasis in original). Plaintiffs describe "a broad perversion of the *entire* process" and a burden on "*every*" Property Owner. *See id.* (first emphasis added, second emphasis in original). Plaintiffs' only authority is *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 152 (D. Mass. 2011), cited for the proposition that they do not need to prove "every harm suffered by every [] Plaintiff." But this does not mitigate the requirement that Plaintiffs themselves still must have been personally injured in order to have standing. *See Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23,

26 (2d Cir. 2008), citing *Allen v. Wright*, 468 U.S. 737, 755 (1984) ("[S]tanding to challenge allegedly discriminatory policies . . . extends [] only to those persons who are *personally* denied equal treatment by the challenged discriminatory conduct." (internal quotation omitted, emphasis in original)). The fact that certain Plaintiffs grieved their taxes for some years but not others is immaterial. Plaintiffs' grievance of their taxes at any time establishes that they were aware of their right and the process for doing so. They do not have standing to claim they were unaware or could not take advantage of the grievance process, which is the gravamen of the Complaint.

###### B.     The Fair Housing Act

Plaintiffs fail to address any of the cases holding that "abstract injury" or general assertions of discrimination are not enough to have standing to bring a claim under the FHA. *See Wetzel*, 308 F. App'x at 476 ("[T]he injury. . .must be [] real."); *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 682 (S.D.N.Y. 1996) (plaintiffs are prohibited from "asserting generalized grievances or abstract questions of wide public significance); *Palmieri v. Town of Babylon*, No. 01-1399, 2006 U.S. Dist. LEXIS 27694, at *40-41 (E.D.N.Y. Jan. 6, 2006) (dismissing FHA challenge to local law where plaintiff pleaded general discrimination).

Plaintiffs' argument that they "have standing to seek prospective injunctive relief because Defendants' misconduct is ongoing," Opp. at 30, also falls flat. Plaintiffs concede that the County has a plan in place that will provide Plaintiffs and the putative class with future relief. ¶ 11. Plaintiffs also do not and cannot claim that they face a threat of injury from an inability to challenge tax assessments. Although Plaintiffs claim that "the grievance process [does not] provide[] the Plaintiffs with complete relief" because Plaintiffs *chose* not to file grievances every year, Opp. at 28, Plaintiffs still had the *knowledge and ability* to file year after year.

C.    **Equal Protection and Due Process Under the Fourteenth Amendment**

Plaintiffs fail to refute any of the cases from this District holding that when state action "leaves [a plaintiff] no worse off," a plaintiff does not have standing to pursue an Equal Protection claim." *See Youth Alive v. Hauppauge Sch. Dist.*, No. 08-CV-1068, 2012 U.S. Dist. LEXIS 148086, at *15 (E.D.N.Y. Oct. 12, 2012) (dismissing plaintiffs' equal protection claims where plaintiffs actually *benefitted* from the challenged action); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 674-77 (S.D.N.Y. 2010) (dismissing claims on standing grounds for plaintiffs who were not affected by the challenged action).

Plaintiffs likewise fail to refute any of the cases holding that standing for both procedural and substantive due process claims requires "actual or threatened injury as a result of the allegedly inadequate process." *Stern v. City of N.Y.*, No. 17-CV-4973, 2019 U.S. Dist. LEXIS 50518, at *9 (E.D.N.Y. Mar. 25, 2019) (citation and quotation omitted); *see also Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (affirming dismissal based on standing where plaintiff failed to allege any injury). Plaintiffs neither allege that they were misinformed about the grievance process nor that Defendants inhibited their ability to file grievances.

Plaintiffs did not suffer any ascertainable injury. As such, Plaintiffs lack standing to bring claims alleging violations of the FHA and the constitutional rights to Equal Protection and Due Process. Accordingly, the Complaint must be dismissed for lack of standing.

III.    **PLAINTIFFS FAIL TO STATE A CLAIM**

Rule 12(b)(6) also requires dismissal because Plaintiffs fail to state claims for violations of the FHA, the U.S. Constitution, 42 U.S.C. § 1981, and the Nassau County Charter. First, FHA claims are not properly before the federal court pursuant to the TIA. *See U.S. v. Nassau*, 79 F. Supp. 2d at 195 (noting that the TIA bars FHA claims alleging discriminatory tax assessment

14

scheme from federal court). Plaintiffs' references to state cases only serve to emphasize that state courts are the proper forum in which to bring FHA claims. *See, e.g.*, Opp. at 32. Second, Plaintiffs do not allege that the Freeze applied differently to Property Owners based on race,[20] that minority Property Owners were barred from utilizing the grievance procedure, or that minority Property Owners were unable to access information about the assessment system and grievance process.[21] Finally, Plaintiffs' arguments are rife with inapplicable case law and irrelevant information. *See, e.g.*, *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2524 (2015) (cited at Opp. at 32) (involving tax credits, which are not at issue here).[22] Plaintiffs also unremittingly distort Defendants' arguments. *See, e.g.*, Opp. at 32 ("Defendants [make a] 'magic words' argument.");[23] *Id.* at 39 ("Defendants concede that 'the *Coleman* plaintiffs' claim of violation for § 603 was not dismissed.").[24]

Accordingly, all of Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

The Complaint should be dismissed in its entirety for the reasons set forth above and in the County's opening brief.

---

[20] *See Chasalow v. Board of Assessors*, 202 A.D.2d 499, 501 (2d Dep't 1994) (dismissing Equal Protection claims because "[i]t is well settled that in the area of real property taxation, rough equality, not complete uniformity, is all that is required.")

[21] *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (due process is not violated if the plaintiff can redress his or her grievances in a meaningful post-deprivation procedure). As to the members of the class that *chose* not to file grievances, "because one must show that the state procedural remedies are inadequate in order to bring a Section 1983 *due process* claim, the availability and *non-use* of such procedures would bar a Section 1983 claim." *O'Leary v. Town of Huntington*, No. 11-CV-3754 2012 U.S. Dist. LEXIS 126086, at *35 n.7 (E.D.N.Y. Sept. 5, 2012) (first emphasis in original, second emphasis added).

[22] Plaintiffs misleadingly claim that Nassau County "admitted" that high property tax burden was a "fair housing impediment" (Opp. at 31, n1.19) but the report Plaintiffs cite merely notes that Nassau County, like many other counties in New York State, has high local taxes, and does *not* state that the County's assessment system discriminates against minority homeowners.

[23] Defendants do not rely on "congressional silence," but instead rely on the plain language of the sections of the FHA that Plaintiffs *chose* to bring their claims under. Sections 3604(b), 3605, and 3617 of the FHA simply do not reference the levying, enforcement, or collection of a tax on real property.

[24] In *Coleman*, the § 603 claim was not dismissed because it was mooted when a consent order between all parties was generated after two and a half years of litigation rather than a decision made on the merits. *See* Br. at 19, n.38.

Dated: New York, New York
      December 5, 2019

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

Regina M. Calcaterra
Daniel Tepper
Lydia Keaney Reynolds
Veronica Bosco
270 Madison Avenue
New York, New York 10016
(212) 545-4600
Calcaterra@whafh.com
Tepper@whafh.com
Reynolds@whafh.com
Bosco@whafh.com

807273