UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE J. HALL, REINA HERNANDEZ, and FLORIDALMA PORTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NASSAU COUNTY, DEPARTMENT OF ASSESSMENT OF NASSAU COUNTY, ASSESSMENT REVIEW COMMISSION OF NASSAU COUNTY, and DOES 1-25,<br><br>Defendants. | Case No.: 2:19-cv-00893-LDH-CLP |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**KIRBY McINERNEY LLP**

Ira M. Press
David A. Bishop
Andrew M. McNeela
250 Park Avenue, Suite 820
New York, New York 10177
Tel.: (212) 371-6600

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

ARGUMENT ......................................................................................................................1

    I.    Applicable Legal Standard ......................................................................................1

    II.    Plaintiffs Continue to Be Harmed by Defendants' Policies ...................................1

    III.    Plaintiffs' Claims Are Capable of Repetition Yet Evading Review ....................4

CONCLUSION ..................................................................................................................5

# TABLE OF AUTHORITIES

**CASES:**

*Amstar Corp. v. United Sugar Workers Local 9*,
   No. 72 Civ. 205, 1972 WL 866 (E.D.N.Y. July 5, 1972) ........................................................ 4

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) ............................................................................................................... 4

*Dean v. Blumenthal*,
   577 F.3d 60 (2d Cir. 2009) ..................................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000) ........................................................................................................... 1, 4

*Granite State Outdoor Advert., Inc. v. Town of Orange, Conn.*,
   303 F.3d 450 (2d Cir. 2002) ................................................................................................... 1

*IPT Co., Inc. v. United States Department of the Treasury*,
   No. 92 Civ. 5542, 1992 WL 212437 (S.D.N.Y. Aug. 25, 1992) ............................................. 2

*Nat'l Advert. Co. v. Town of Babylon*,
   900 F.2d 551 (2d Cir. 1990) ................................................................................................... 4

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009) ................................................................................ 1-2

**REGULATIONS:**

Nassau County Administrative Code § 6-34.0(2) (2021) ............................................................. 2

Pursuant to the Court's March 24, 2021 Order, Plaintiffs respectfully submit this Supplemental Memorandum of Law to address the issue of whether Plaintiffs' claims for declaratory and prospective injunctive relief ("Non-Monetary Claims") are moot. As discussed below, Defendants have failed to meet their heavy burden of establishing that any changes to Nassau County's assessment policies have mooted Plaintiffs' Non-Monetary Claims. Rather, the Court has jurisdiction to hear those claims because: (i) Defendants' policies continue to harm Plaintiffs; and (ii) the controversy is capable of repetition, yet evading review.

## ARGUMENT

### I. Applicable Legal Standard

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (citation omitted). The test for determining whether voluntary cessation has mooted a claim "is *stringent*" and imposes a "*heavy* burden" on the party asserting mootness. *Id.* (emphasis added). Where a defendant's policies continue to harm a plaintiff despite the alleged cessation of the challenged policy, the case is not moot. *Granite State Outdoor Advert., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam) (case moot where "interim relief or [subsequent] events have *completely and irrevocably eradicated the effects of the alleged violation*") (emphasis added). Moreover, even if there is no continuing harm, the party asserting mootness must establish that "subsequent events [have] made it *absolutely clear* that the allegedly wrongful behavior could not *reasonably be expected* to *recur*." *Friends of the Earth, Inc.*, 528 U.S. at 189 (emphasis added) (internal quotation marks omitted).

### II. Plaintiffs Continue to Be Harmed by Defendants' Policies

Plaintiffs' Non-Monetary Claims are not moot for the simple reason that Plaintiffs continue to be harmed by Defendants' policies, notwithstanding the 2018 Reassessment. *See In re Vivendi*

*Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 585 (S.D.N.Y. 2009) ("the issue for mootness was whether there was any continuing injury"); *see also IPT Co., Inc. v. United States Department of the Treasury*, No. 92 Civ. 5542, 1992 WL 212437, at *3 (S.D.N.Y. Aug. 25, 1992) ("Where the alleged injury is continuing, the controversy cannot be moot.").

The crux of Plaintiffs' action is that Defendants' unfair practices result in homes in affluent, white neighborhoods being underassessed (because their value appreciates at a greater rate than homes in other communities), which, in turn, results in homeowners in poorer, minority communities paying a disproportionate share of Nassau County's annual tax levy. (¶¶ 1- 15, 62, 67-77, 272-73).[1] While the 2018 Reassessment was, in theory, aimed at remedying these issues, in practice it perpetuates the *exact same harm* to Plaintiffs.

*First*, Nassau County is not currently applying the full amount of the reassessed property values to determine each homeowner's share of Nassau County's overall tax levy. Rather, as Defendants admit, Nassau County is incrementally phasing those values in over a five-year period, *see* Defs.' Suppl. Br. at 4, ECF No. 45, and therefore the *full values will not be applied until 2025*. *See* Nassau County Administrative Code § 6-34.0(2) (2021). This means that poorer, minority homeowners will continue to pay a disproportionate share of Nassau County's tax levy until at least 2025.[2] *See IPT Co., Inc.*, 1992 WL 212437, at *3 (remedial administrative action did not

---

[1] Unless otherwise specified, all citations to "(¶ ___)" are to the Class Action Complaint filed in this matter. *See* ECF No. 1.

[2] Defendants note that the purpose of the five-year phase in of reassessed property values is to avoid "sudden increases in property taxes." Defs.' Suppl. Br. at 4-5, ECF No. 45 (citation omitted). A more accurate description is as follows: In order to minimize complaints from wealthy, white homeowners that they are no longer being undertaxed, Nassau County will continue to overtax its poorer, less-politically powerful, minority residents for at least 5 more years.

moot claim because although the "restrictions . . . may be more limited than those that were initially imposed" the plaintiff nonetheless continued to be impacted). [3]

*Second*, as Defendants admit, Nassau County has returned to its prior practice of freezing "property valuation updates," *see* Declaration of Robert Miles ("Miles Decl.") at ¶ 4, ECF No. 46, so that even the 2025 target date for ending the discriminatory practices is no longer realistic.[4] Defendants' contention that the freeze was instituted "[d]ue to the instability of Nassau's County's real estate market caused by the COVID-19 pandemic," *id.*, is irrelevant to the issue of mootness.[5] Rather, what matters is that Defendants do not dispute that the planned freeze results in continuing harm to Plaintiffs, *see* Defs. Suppl. Br. at 1-5; (¶¶ 67-77) (describing impact of prior freezes).

Even if there were no freeze or lengthy phase-in, the harm to Plaintiffs would continue absent injunctive relief due to Nassau County's longstanding policy of not contesting homeowner grievance filings, which are filed primarily by wealthier, white homeowners. (¶¶ 78-95).

---

[3] Defendants grasp at straws in arguing that the Complaint concedes that the 2018 Reassessment resolves all issues between the parties prospectively. *See* Defs.' Suppl. Br. at 1, 4. The law phasing-in the reassessed property valuations over five years – rather than applying them immediately – was not passed until March 23, 2020, *a year after* the Complaint had been filed. *See* Declaration of Andrew M. McNeela ("McNeela Decl.") Ex. A, Apr. 7, 2021. That is why the Complaint expressly reserved the right to challenge the 2018 Reassessment depending on how Defendants implemented it. (¶ 11 & n.3).

[4] Pursuant to the planned freeze, Nassau County is going to base its 2022-2023 property tax assessments on 2021-2022 property values. *See* Miles Decl. at ¶ 4. Defendants do not rule out the possibility that the freeze will be extended to subsequent years. *See id.*

[5] Defendants' explanation underscores that the planned freeze will be particularly harmful to Plaintiffs. The purported "instability" in Nassau County's real estate market is a function of the current increased demand for homes in wealthy, white neighborhoods as Manhattan residents relocate due to COVID. *See* McNeela Decl. Ex. B & C. That demand accelerates property value increases in those neighborhoods compared to homes in poorer, minority neighborhoods. Thus, by freezing property values, and not accounting for that increase in apportioning its future tax levy, Nassau County is essentially forcing poor, minority homeowners to subsidize the current property value windfall being enjoyed by homeowners in affluent, white neighborhoods.

Thus, a prospective injunction (i) requiring Nassau County to apportion its tax levy based on each homeowner's full property value (rather than the fractional rate for the remainder of the phase-in period), (ii) preluding the current freeze as well as future freezes, and (iii) ending the practice of settling tax grievance filings irrespective of merit, would clearly address a continuing harm, and therefore the relief sought is not moot.

## III. Plaintiffs' Claims Are Capable of Repetition Yet Evading Review

Even if there was no continuing harm, Plaintiffs' Non-Monetary Claims are still not moot because the challenged practices are capable of repetition, yet evading review.[6]

*First*, the fact that Nassau County's current County Executive, Laura Curran, has announced that the County will freeze property values for the 2022-2023 tax year[7] – which is one of the primary *pre*-Reassessment policies Plaintiffs have challenged (¶¶ 67-77) – proves that Plaintiffs' claims are capable of repetition, yet evading review post-Reassessment.[8]

*Second*, *even before* Defendants publicized their intention to reinstate valuation freezes, Defendants' recidivism – as exemplified by their post-*Coleman* policies (¶¶ 32-96) – supports the belief that they may resurrect the challenged policies post-Reassessment absent injunctive relief.[9]

---

[6] *See Friends of the Earth, Inc.*, 528 U.S. at 193 (case not moot unless changes "made it absolutely clear" that the challenged conduct "could not reasonably be expected to recur") (internal quotation marks omitted); *Nat'l Advert. Co. v. Town of Babylon*, 900 F.2d 551, 554 n.2 (2d Cir. 1990) ("a voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality *the particular governing body remains free to reinstitute the law at a later date*.") (emphasis added).

[7] *See* Defs.' Suppl. Br. at 2 n.3; *see also* McNeela Decl. Ex. D.

[8] *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982) (case not moot where city defendant indicated that it might reenact the offending provisions in the future).

[9] *Amstar Corp. v. United Sugar Workers Local 9*, No. 72 Civ. 205, 1972 WL 866, at *7 (E.D.N.Y. July 5, 1972) (union members return to work did not moot action seeking to compel arbitration in the event of future disagreements because "[t]he union's behavior justifies plaintiff's doubts that such an arbitration can be had without legal compulsion[]").

*Third*, at the September 12, 2019 Hearing, Defendants' counsel made clear that Nassau County's assessment policies are subject to the whims of whatever administration is in power at any given time. *See* Tr. of Sept. 12, 2019 Premotion Conference, ECF No. 25, at 4:11-15, 5:1-7, 27:6-16. In fact, the Court recognized that – if Nassau County's vying political factions disagree on how to fairly assess home values as Plaintiffs have alleged – the same problems could repeatedly arise:

MS. CALCATERRA: [U]nderstanding how Government works and different administrations. What happened with the *Coleman* stipulation and that agreement, and then you have a new administration that comes in about ten years later . . . .

\* \* \* \*

THE COURT: Stop for a second. It just reenforces the argument that the plaintiff is making, that we could end up here *over and over and over again*.

Tr. at 28:1-4, 11-13 (emphasis added).[10]

For these reasons, the facts of the instant case are far different from those presented in *Dean v. Blumenthal*, 577 F.3d 60 (2d Cir. 2009), where there was no history of recidivism or efforts to reinstate the prior challenged practices (such as the 2022-2023 valuation freeze).[11]

## CONCLUSION

Plaintiffs' Non-Monetary Claims are not moot.

---

[10] As noted in the Complaint, several Nassau County legislators adamantly opposed the Reassessment, and that opposition continues to this day. ¶ 173. In fact, the Republican Party of Nassau County recently announced that its current candidate for County Executive has vowed to "fix" the current reassessment system, which has hiked taxes for "65% of Nassau's homeowners." *See* McNeela Decl. Ex. E.

[11] Indeed, in *Dean* the Second Circuit premised its decision on, *inter alia*, the defendant "Attorney General's *consistent and voluntary conduct over an extended period of time* in not enforcing" the challenged policy, as well as the Attorney General's representation that he had no intention to reinstitute the policy. 577 F.3d at 65. Here, Defendants provide no such statement from the Nassau County Executive. And for good reason: she has already announced a new freeze, which she has the power to extend via executive order. *See* Miles Decl. at ¶ 4. Rather, the best Defendants can muster is a declaration from a low-to-mid level County functionary, who did not provide any basis to believe that he is involved in setting assessment policy. *See id.* at ¶¶ 1-6.

5

Dated: April 7, 2021                                  Respectfully submitted,
      New York, New York

                                             **KIRBY McINERNEY LLP**

                                             /s/ *Andrew M. McNeela*
                                             Andrew M. McNeela
                                             Ira M. Press
                                             David A. Bishop
                                             250 Park Avenue, Suite 820
                                             New York, New York 10177
                                             Tel.: (212) 371-6600
                                             Email: amcneela@kmllp.com
                                                        ipress@kmllp.com
                                                        dbishop@kmllp.com

                                             *Counsel for Plaintiffs*